Mary Sykes, Appellee, v. Robert B. Waring et al., Defendants; William A. Ehlers, Intervenor, Appellant.

No. 45271.

June 18, 1940.

Rehearing Denied September 27, 1940.

Whicher & Whicher and William A. Ehlers, pro se, for intervenor, appellant.

Underhill & Underhill, for appellee.

STIGER, J.—In 1935 J. P. Thompson executed and delivered to plaintiff a real-estate mortgage in which the granting clause is as follows: "* * * sell and convey * * * the following described real estate in Woodbury County, Iowa, described as follows, to wit: [real estate described] and also all the rents, issues, uses, profits and income therefrom, and all the crops at any time raised thereon from the date of this assignment until the terms of this agreement are complied with and fulfilled."

The granting clause constituted a valid chattel mortgage on the rents. Bankers Life Company v. Garlock, 227 Iowa 1335, 291 N. W. 536; Equitable Life Insurance Company v. Brown, 220 Iowa 585, 262 N. W. 124.

Goldie Hughes, of Onawa, Iowa, inherited the real estate from her father J. P. Thompson. On March 1, 1939, she leased the property from March 1, 1939, to March 1, 1940, to Gilbert Wirth. In January 1939 Mrs. Hughes, through her real-estate agent, G. A. Mellinger, of Omaha, Nebraska, entered into a contract with Mark Mattison (whom plaintiff claims is a fictitious person) for the exchange of her 360 acres in Iowa for a ranch in Nebraska containing 960 acres. The contract provided that Mrs. Hughes was to pay the owner of the ranch the sum of $1,500 in addition to conveying the 360 acres. The contract was to be performed when Mary M. Crooker obtained

title to the Nebraska ranch through foreclosure proceedings on her first mortgage. Robert B. Waring of Geneva, Nebraska, was, according to plaintiff's testimony, attorney for Mrs. Crooker and Mattison.

After making several unsuccessful efforts to secure the money Mrs. Hughes was obligated to pay under the contract, Mellinger obtained a loan of $1,500 from intervenor, W. A. Ehlers, in March 1939 through the following arrangement: Mellinger had Mrs. Hughes and her husband execute a note secured by a mortgage on the Nebraska land payable to Mattison which instruments were held by Mellinger until Mrs. Crooker obtained title through the foreclosure proceedings. As additional security for the loan, Waring agreed to give intervenor one fourth of the proceeds of a resale of the Iowa land by Mellinger. In March the exchange of the lands was completed in the office of Mr. Waring. Mrs. Hughes received deeds to the Nebraska land from the receiver in the foreclosure suit and Mrs. Crooker. Mellinger, representing Mrs. Hughes, delivered to Waring a deed to the Iowa land from Hughes to Mattison and at the same time produced a deed from Mattison to Waring which he delivered to Waring. At the same time Mellinger delivered the note and mortgage on the Nebraska land, purporting to be endorsed in blank by Mattison, to intervenor. Thereupon intervenor delivered his check for $1,500 to Mellinger who endorsed it to the receiver in the foreclosure proceedings. The check was paid. The record does not disclose why Mellinger made Mattison a party to the contract and grantee in the deed instead of Mrs. Crooker who executed and delivered her deed to the Nebraska land to Mrs. Hughes and, so far as shown by the record, received no consideration for her deed. The contract is not before us and the only knowledge we have of its contents is from fragmentary references to it in the evidence. According to intervenor's testimony, Waring, as owner of the real estate, demanded, when the deeds were exchanged, the lease from Mr. Hughes, who stated he did not have it with him.

When it became apparent that Mellinger could not resell

the Iowa land and pay intervenor one fourth of the proceeds of the sale because of the impending foreclosure of plaintiff's mortgage, intervenor demanded of Waring additional security for his loan of $1,500 to Mrs. Hughes. He and Waring then went to the home of Mrs. Hughes in Onawa in July 1939 and Waring, as owner of the real estate, demanded and secured from her an assignment of the lease and then reassigned it to intervenor as security for the loan.

Plaintiff brought this suit to foreclose her real-estate mortgage and for the appointment of a receiver. Mr. Ehlers, intervenor, alleged in his petition that Mrs. Hughes had leased the premises to Gilbert Wirth from March 1, 1939, to March 1, 1940; that Mrs. Hughes sold the land and assigned the lease to Waring; that Waring assigned and sold the lease to intervenor for a valuable consideration and asked that his rights to the land under the lease be declared superior to plaintiff's rights under her chattel mortgage.

Plaintiff in answer to the petition of intervention alleged that Mr. Waring procured the lease from Mrs. Hughes by fraud and without consideration; that he had actual and constructive notice of the chattel mortgage; that the assignment of the lease from Waring to intervenor was without consideration and made with the fraudulent purpose of defeating plaintiff's rights under her mortgage; that intervenor had actual and constructive knowledge of plaintiff's lien.

In an amendment to her answer plaintiff alleged that Mark Mattison, grantee in the deed given by Mrs. Hughes, was a fictitious person and that the conveyance was of no force or effect and void; that the alleged deed from Mattison to Waring was void and that neither Waring nor intervenor had any rights under the lease; that the deed from Mrs. Hughes to Mattison was pursuant to a conspiracy between Mellinger, Merten, the notary public who took the acknowledgment to the deed and assignment of the mortgage, intervenor, and Waring; that Mrs. Hughes intended to enter into a contract with Mattison and did not know that he was a fictitious person; that Waring

procured the assignment of the lease from her under his statement that he was the owner of the property.

I. We are inclined to the view that Mattison was a fictitous person. Mr. and Mrs. Hughes testified that Mellinger and Waring stated that they represented Mattison and that they would not have signed the deed if they had known that no such person existed.

Ehlers, intervenor, who lived in Omaha, testified Mellinger told him Mattison was a real-estate broker living in Omaha; and that he had never seen or heard of him.

Mr. Underhill, of counsel for plaintiff, testified that Mellinger told him Mattison lived in Geneva, Nebraska; that after the petition of intervention was filed he had a conversation with Mellinger in Omaha. Mr. Underhill testified for plaintiff:

"I said to him, 'It looks to me like this man Mattison is a straw man.' Mr. Mellinger just simply laughed at that and didn't say yes or no. Mellinger gave the impression that he was around Omaha."

A witness for plaintiff testified that she had been a resident of Geneva, Nebraska, a town of 1,800 inhabitants, for the past 47 years and stated:

"I know Robert B. Waring. He is a lawyer there. I never heard of Mark Mattison. To the best of my knowledge there has never been anyone living there or the surrounding country by the name of Mark Mattison."

Mr. Underhill made an investigation of Mattison at Omaha in 1939 prior to the commencement of this litigation. Real-estate brokers who had been residents of Omaha many years stated that they had never heard of Mattison. His name did not appear in the Omaha telephone directory, the city directory or on the polling list. Mr. Underhill addressed letters to Mattison at Geneva and Omaha and they were all returned with the notation "unknown."

Mr. Underhill interviewed George H. Merten, the notary

public who took the acknowledgment of Mattison to the deed of the Iowa land to Waring, and to the assignment of the $1,500 mortgage to intervenor. The witness testified:

"He told us that he did not know Mark Mattison. He said that somebody introduced him to this party, whom he didn't know at all, and he just took it for granted that it was Mark Mattison that signed the deed. He said he was acquainted with intervenor, Ehlers, and Mellinger. He said that neither Mellinger nor Ehlers introduced Mattison to him. He took the acknowledgment out in a car somewhere. He said that if he was given about an hour's time he would be able to see who it was that introduced Mattison to him, and during the interval of the hour he would go out and find out. Mr. Merten did not return. We waited a long time for him and finally gave up and left."

In connection with the statement of the notary public that Mellinger did not introduce Mattison to him, we should state that Mellinger's name appears as a witness to the deed from Mattison to Waring. Mellinger is the agent who closed the contract between Mrs. Hughes and Mattison, produced the acknowledged deed from Mattison to Waring and the assignment of the $1,500 mortgage from Mattison to intervenor, and he was acquainted with the notary public. The circumstances point to Mellinger as the person who would have introduced Mattison to Merten if Mattison had, in fact, appeared before Merten.

The witness further testified:

"We inquired of reputable attorneys at Omaha about Mr. Merten and they informed us that there had been some trouble in which he was involved. We were advised that there was a disbarment proceeding pending against him."

The check Mrs. Hughes gave for the payment of interest on the $1,500 mortgage was payable to Mattison and endorsed "Mark Mattison by W. A. Ehlers."

Mattison was not present when the exchange of lands was completed at the office of Mr. Waring.

Mr. Waring, a defendant in the case, was attorney for "Mattison" and Mrs. Crooker and a deed from "Mattison" to him was produced at the same time Mrs. Hughes delivered her deed to him at his office. He was associated with Mellinger, the land agent, and Mr. Ehlers, the intervenor, in the land and mortgage transactions. However, he did not testify in his own behalf nor was he a witness for intervenor.

When intervenor agreed to make the loan to Mrs. Hughes and was to receive a mortgage on the Nebraska land and a one-fourth interest of the resale of the Iowa land by Mellinger, Waring executed a memorandum agreement dated March 3, 1939, which date was prior to the exchange of deeds. It stated that title to the Iowa land "will eventually vest in the undersigned Robert B. Waring." The memorandum further stated:

"The said Robert B. Waring by these presents acknowledges that he will hold the title to said real estate in trust, and that the beneficiaries thereof are: G. A. Mellinger, one-fourth; A. J. Pregler, one-fourth; William A. Ehlers, one-fourth, and the remaining one-fourth is the property of Robert B. Waring."

Mr. Waring was apparently somewhat doubtful of the excellence of his title to the real estate and lease as in the assignment of the lease to intervenor he inserted the following provision:

"The said assignor by these presents, however, does not guarantee or warrant the ownership in or the right or title to of said Robert B. Waring in and to the said landlord's share, and this assignment is made subject to any outstanding equities or claims of all other persons whomsoever."

No objection was made to the evidence introduced by plaintiff.

We conclude from all the evidence, which includes many unusual circumstances, that the grantee Mattison in the deed from Mrs. Hughes was a fictitious person. The grantee being

nonexistent, the deed was a nullity and Waring acquired no title to the Iowa land under his deed from Mattison. Mrs. Hughes intended only to convey to Mattison and assigned the lease to Waring on the assumption he was entitled to it as owner of the land under Mattison's deed. Waring's title to the lease is no better than his title to the land, and intervenor, assignee of the lease from Waring, of course, has no greater rights than his assignor. It follows that plaintiff's chattel mortgage on the rents is superior to any interest of Waring or Ehlers.

II. Plaintiff has another defense to the petition of intervention. When intervenor found that plaintiff's impending foreclosure suit would prevent the sale of the land by Mellinger and Waring, he desired additional security for his loan. He testified: "I was interested in getting the lease assigned to me. I was to get the lease in consideration of this $1,500 deal."

Plaintiff's mortgage was not indexed in the chattel mortgage index book until after intervenor obtained an assignment of the lease from Waring.

Assuming intervenor did not have actual notice of plaintiff's lien, it is apparent that he obtained the lease as security for a pre-existing debt and hence he was not a subsequent purchaser for value. Martin v. Fritz, 194 Iowa 740, 190 N. W. 514; Soehren v. Hein, 214 Iowa 1060, 243 N. W. 330; Hughes v. Wessell, 226 Iowa 811, 285 N. W. 200.

III. Plaintiff's real-estate mortgage, which included a chattel mortgage on the rents, was executed by J. P. Thompson. The lease in question was made by Goldie Hughes who inherited the property from Mr. Thompson. The intervenor did not claim in the trial below that the lien of plaintiff's chattel mortgage did not attach to the 1939 crops because they did not belong to the mortgagor when they came into existence. Bankers Life Co. v. Garlock, 227 Iowa 1335, 291 N. W. 536; Equitable Life Assurance Society v. Hastings, 223 Iowa 808, 273 N. W. 908; Fawcett Investment Co. v. Rullestad, 218 Iowa 654, 253 N. W. 131, 94 A. L. R. 800.

IV. Plaintiff's mortgage was on 160 acres of the 360 acres deeded by Mrs. Hughes to Mattison. The Onawa State Bank had commenced foreclosure proceedings on its mortgage on the remaining 200 acres in which case Mr. Ehlers was an intervenor. All the land was rented to the same tenant. Intervenor complains of the overruling of his motion to consolidate the two foreclosure cases. Consolidation is discretionary and an examination of the record shows there was no abuse of discretion in refusing the consolidation. The case is affirmed.— Affirmed.

HAMILTON, C. J., and SAGER, MITCHELL, MILLER, HALE, and BLISS, JJ., concur.