Iowa Development Company, appellee, v. Iowa State Highway Commission, appellant.

Emma C. Murphy, appellee, v. Iowa State Highway Commission, appellant.

No. 50195.

(Reported in 108 N.W.2d 487)

980

APRIL 4, 1961.

REHEARING DENIED JUNE 13, 1961.

Evan L. Hultman, Attorney General, C. J. Lyman, Special Assistant Attorney General, Donald L. Beving, and Keith E. McWilliams, all of Des Moines, for appellant.

Duncan, Jones, Hughes, Riley & Davis, of Des Moines, for appellee Iowa Development Company.

Steward, Crouch & Kelly, of Des Moines, for appellee Emma C. Murphy.

GARFIELD, C. J.—Two adjoining landowners, Iowa Development Company and Emma C. Murphy, as plaintiffs, appealed to the district court from the assessment of damages by commissioners for the taking by eminent domain of part of their lands for interstate highways. Upon plaintiffs' motion the two cases were consolidated for trial. From the court's ascertainment of the amount of damages, following trial without a jury, defendant state highway commission (herein called "the commission") has appealed to us.

Iowa Development Company, a wholly owned subsidiary

of the Chicago Great Western Railroad Company, owned a tract of 342.1 acres, about three fourths of a mile north-northeast of the Des Moines city limits. It is bounded on the east by East Twenty-ninth Street, on the north by Berwick Road, on the west partly by Delaware Avenue, and on the south by the Great Western right of way. A parcel of about 30 acres of the tract owned by this plaintiff lies just west of Delaware Avenue which separates the northeast corner of the parcel from the southwest corner of plaintiff Emma C. Murphy's tract of 34 acres. The Murphy land is joined on the north, east and south by the development company's land. The railroad right of way curves somewhat to the north as it goes east along the south line of the 342 acres.

On August 27, 1958, the commission condemned 175.4 acres owned by the development company and 25.5 acres of the Murphy tract for construction of Interstate Highways 35 and 80 and the interchanges between the two. Route 35 is to cross the state from south to north and 80 from west to east. For several miles just west of the east line of the Murphy land the two routes are combined. At this point, however, No. 35 turns north toward Ames and 80 continues on east toward Newton. It was apparently thought the large amount of land taken was necessary for the complicated interchanges, forming Ys and figure 8s, at this point.

The taking leaves the development company 166.7 acres in four separate parts. Northeast of the interchanges is a tract of 61.6 acres, to the northwest are 47 acres, southwest 33.4 acres, and southeast 24.7 acres. Eight point five (8.5) acres of the Murphy tract remain, in the form of a triangle. Its west line is virtually the entire frontage of the tract on Delaware Avenue. Its north line is about the west two thirds of the north line of the original tract. The hypotenuse of the triangle, along the southeast side, is also the northwest line of the land taken.

The trial court ascertained the amount of damages due the development company is $380,285.50, and the amount due Mrs. Murphy is $38,800, with interest from date of the taking.

■ I. The commission first assigns error in the consolidation for trial of the two cases.

Rule 185, Rules of Civil Procedure, provides: "Unless some party shows he will be prejudiced thereby the court may consolidate separate . actions which involve common questions of law or fact or order a single trial of any or all issues therein. * * *." In 1955 the then rule 185 was changed by substituting "shows", fourth word above, for "objects, stating that." Thus the present rule requires a showing, rather than a mere statement, of prejudice. Under the former rule a party could prevent a consolidation by claiming prejudice. Now it is for the court to determine whether such claim is well founded. See pocket part, volume 2, Cook's Iowa Rules of Civil Procedure, Revised Edition, page 32.

■ As the commission concedes, the question whether these actions should be consolidated for trial was largely within the trial court's discretion. See Keller v. Harrison, 139 Iowa 383, 386, 116 N.W. 327; Sykes v. Waring, 228 Iowa 1047, 1055, 293 N.W. 14; United States v. Knauer, C. A. Wis., 149 F.2d 519; 88 C. J. S., Trial, section 6, page 27; 53 Am. Jur., Trial, section 66. We find no abuse of discretion here.

■ It is clear the two cases involve common questions of law and fact. As stated, the Murphy tract is bounded by the development company's land on three sides. On the fourth side Delaware Avenue is the west boundary of the Murphy tract and much of the development company's land. The same commissioners assessed the damages to both tracts on the same day. Much testimony in the district court relates to both cases. Most of the witnesses on valuations expressed their opinions as to both tracts. Separate trials would have resulted in a good deal of repetition of testimony.

Defendant's resistance to plaintiffs' motion to consolidate alleges a consolidation would be prejudicial to defendant and that different factors affect the value of the two tracts. The motion was evidently submitted on the pleadings without any showing of prejudice except such as might be apparent therefrom. We are not prepared to hold this was a showing of prejudice which warrants a reversal.

II.   Defendant asserts it was error to permit each plaintiff to adopt the evidence of the other upon the trial.

In about ten instances counsel for one plaintiff stated he adopted the testimony of a witness just examined or cross-examined by the other plaintiff.   Only once did defendant object to such a statement.   Defendant's valuation witness Rouze testified on direct examination only as to the Murphy land.   At the end of a long cross-examination by Mrs. Murphy's attorney, counsel for the development company asked that the record show his client joined in the evidence thus adduced.   Defendant's attorney then asked that the record show he objected to this for the reason the testimony pertained only to the Murphy property.   No ruling was made or demanded as to either request. At the end of all testimony counsel for each plaintiff stated he adopted all testimony offered by the other.   Defendant made no objection.

At the beginning of the trial defendant's counsel stated, "It is our thought the general evidence as to the vicinity and neighborhood can * * * apply to both properties but the value should be developed separately so there is no question but (sic) that the witnesses are valuing the whole thing as one tract as though it were in a single ownership."

We think this assignment of error presents nothing for review upon this record.   The effect of the agreement just quoted seems to be that evidence applicable to both properties be so considered but evidence as to values be considered as to each tract separately, not as to both jointly.   So far as shown this was done.   The one objection to any attempt by either plaintiff to adopt testimony adduced by the other did not clearly raise the question now raised by this assignment of error.   As stated, there was no ruling upon this objection.   It was defendant's duty to request or demand a ruling if desired.   Since no such request or demand was made the objection might be deemed waived. Shover v. Iowa Lutheran Hospital, 252 Iowa 706, 721, 107 N.W.2d 85, 93, 94, and citations.

III.   Error is assigned in admitting evidence of the sale price of other lands not shown to be similar to the land in question.

Plaintiffs' most important witness was Mr. Paul Neal, a Des Moines real-estate broker. The development company acquired its 342 acres through options Neal obtained for it in his own name. He also acted as agent for this plaintiff in managing farming operations on the land. After expressing his opinion of the value of the development company's land just before and after the taking, Mr. Neal testified on direct examination, over defendant's objection, to the price paid for many other tracts in and near Des Moines. The sales so testified to include:

From Goode to Iowa Power & Light Co., one acre @ $2500,

From Des Moines & C. I. Ry. Co. to Levine, 4 or 5 acres @ $2000 or $2500, per acre,

From Kisky to Consumers Co-op, 5 acres @ $2000 per acre,

From Sargent Inv. Co. to J. I. Case, 4.8 acres @ $8000 per acre,

From Sargent Inv. Co. to Gibbs-Cook, 3-plus acres @ $8000 per acre,

From Gibbs-Cook to Firestone Tire & R. Co., part of last tract @ $12,000 per acre,

From Brown to Nussbaum, 7 acres @ $9000 per acre,

From Meister to Stoddard Development Corp., 5 acres @ about $3500 per acre,

From Chicago & N. W. Ry. to Sargent, 3.62 acres @ $2500 per acre,

From Goode to Stran-Steel, about 7 acres @ $3000 to $4000 per acre,

To Iltis Lumber Co., 8 acres @ $2000 per acre.

First of these tracts was a strip about 33 feet wide for access to a highway.

On plaintiffs' cross-examination of defendant's witness Rouze, who testified to before-and-after values of the Murphy tract, he was asked about each of these sales and also a sale from Jensen to Stoddard Development Company of five acres said to be at $4000 an acre. Defendant's objections to the questions were consistently overruled. On plaintiffs' redirect examination of their witness Hall, who testified to before-and-after

values of both subject properties, at least three sales listed above were shown, over defendant's objection.

Prior to our decision in Redfield v. Iowa State Highway Comm., 251 Iowa 332, 99 N.W.2d 413, 416, two months after the trial court decided the present cases, the rule in Iowa and several other states was that sale prices of other similar properties could be shown only on cross-examination of expert value witnesses, to test their knowledge and competency and as bearing on the weight and value of their opinions. See Redfield case and citations at page 337 of 251 Iowa, page 416 of 99 N.W.2d, including Hubbell v. City of Des Moines, 166 Iowa 581, 595, 147 N.W. 908, Ann. Cas. 1916E 592. The Redfield decision, however, holds such evidence admissible on direct examination as substantive evidence of value. See also Harmsen v. Iowa State Highway Comm., 251 Iowa 1351, 1357, 105 N.W.2d 660, 663, 664.

Other similar sales need not be identical but must have a resemblance in order to be shown in evidence. Size, use, location and character of the land and time, mode and nature of the sale all have a bearing on the admissibility of such evidence. Much must be left to the sound discretion of the trial court in determining whether the other properties and conditions surrounding sale thereof are sufficiently similar so evidence of such sales is admissible. Redfield case, page 341 of 251 Iowa, at pages 418, 419 of 99 N.W.2d; 5 Nichols on Eminent Domain, Third Ed., section 21.31, pages 280–282.

The cited precedent involved a tract of 97.2 acres near the north edge of Des Moines. We held a five-acre tract, apparently sold for $4000 an acre, "was hardly comparable to appellants' larger and more remote tract." (Page 336 of 251 Iowa, page 416 of 99 N.W.2d) The development company's land here was three and one-half times as large as Redfield's. Most of the tracts listed above contain five acres or less and in other respects are dissimilar to the development company's tract. We agree with defendant that the listed tracts were not shown sufficiently similar to the development company's tract so evidence of these sales was admissible for any purpose in its case.

Nor was evidence of at least some of the sales admissible in Mrs. Murphy's case.

Plaintiffs argue the trial court did not consider evidence of the sale price of other property. The argument is based on these statements in its findings of fact and conclusions of law when the cases were decided: "This may be an appropriate time to refer again to the objections made by the defense to certain evidence offered by plaintiffs which involved the rule of the Hubbell case, 166 Iowa 581. The court is of the opinion it must follow the rule of that case and it does follow that rule and the objections of defendant are sustained to the degree they must be sustained in order to comply with the rule in the Hubbell case. Furthermore, to make it clear the court does follow that rule, the court has not taken into consideration evidence of comparable sales offered by plaintiffs even to show growth in industry and land values in the area where the condemnation occurred nor the growth in industrial tendencies or tendencies to greater values in that area *except insofar as that evidence has been developed on cross-examination.*" (Emphasis added.)

Throughout the long trial defendant's objections to evidence of other sales had been overruled. The trial court's findings and conclusions overrule defendant's objection to exhibit 7, a deed from Chicago & N. W. Ry. to Sargent of 3.62 acres sold for $9050, one of the tracts heretofore listed. The deed was identified by Mr. Neal on direct examination by plaintiffs and then offered.

The effect of our Redfield decision is that evidence formerly receivable only on cross-examination of value witnesses, for a limited purpose, is now admissible also on direct examination of witnesses with knowledge of the facts and it may also be considered on the question of value of the property under condemnation. So it is unimportant here whether evidence of other sales to which we have referred, was brought out on direct or cross-examination except in determining whether the trial court considered it in reaching its decision. It seems clear evidence of the sales heretofore listed was considered. It was developed on cross-examination. We think it was improperly considered

because of insufficient similarity with the development company's tract and, as to at least some of the sales, with Mrs. Murphy's tract.

The trial court's discretion in determining whether other tracts are sufficiently similar to the property under consideration to permit evidence of sales thereof is not unlimited. 5 Nichols on Eminent Domain, Third Ed., section 21.31, pages 282, 283. See also Id., pages 288, 289.

IV. Error is assigned in admitting evidence defendant says pertained to speculative development of the 342 acres.

The engineering department of the Great Western Railroad prepared for the development company a plat (exhibit 1) showing lead and spur railroad tracks that could be built and used for industrial purposes for which, it was said, its tract was adapted. The plat was received in evidence without objection. Quite a little testimony was admitted as to adaptability of the 342 acres for industrial use—much of it without objection. This assignment of error seems to be based largely on admission of the plat and the other testimony as to adaptability of the lands of both plaintiffs for industrial purposes. Defendant may not complain of receipt of the plat or of much of the other evidence referred to because of lack of timely objection upon the trial.

We will say, however, the evidence was proper. It is true the trackage shown on exhibit 1 had not been built although some preliminary work had been done on it. Nor had either tract ever been actually used for an industrial purpose. But the evidence was not too speculative.

"* * * the owner is entitled to have the jury informed of all the capabilities of the property, as to the business or use, if any, to which it has been devoted, and of any and every use to which it may reasonably be adapted or applied. And this rule includes the adaptation and value of the property for any legitimate purpose or business, even though it has never been so used, and the owner has no present intention to devote it to such use [citations]." Ranck v. City of Cedar Rapids, 134 Iowa 563, 565, 566, 111 N.W. 1027, 1028. To like effect are Hamer v. Iowa State Highway Comm., 250 Iowa 1228, 1230,

98 N.W.2d 746, 748; Nedrow v. Michigan-Wisconsin Pipe Line Co., 245 Iowa 763, 770, 61 N.W.2d 687, 691; Kukkuk v. City of Des Moines, 193 Iowa 444, 457, 187 N.W. 209; 18 Am. Jur., Eminent Domain, section 244.

V. Error is claimed in admitting evidence of the sale price of about 150 acres sold by Marquis to the Boss Hotel interests in late 1958 (deed dated January 10, 1959) because, it is said, the land was enhanced in value by the contemplated interstate highways and the ruling indirectly violates the rule that evidence of the price paid by the condemnor for other property is inadmissible because not a fair indication of market value. The rule referred to is stated in Wilson v. Fleming, 239 Iowa 718, 728, 31 N.W.2d 393, 398; Basch v. Iowa Power & Light Co., 250 Iowa 976, 979, 95 N.W.2d 714, 716; Stortenbecker v. Iowa Power & Light Co., 250 Iowa 1073, 1077, 96 N.W.2d 468, 470.

The first inquiry concerning the sale from Marquis to Boss was in defendant's cross-examination of plaintiffs' value witness Hall. The price was not then shown but it was testified to on plaintiffs' redirect examination of Hall and their direct examination of Neal, also on plaintiffs' cross-examination of defendant's value witness Rouze but without objection by defendant. Since the evidence now complained of was received at least in this last instance without objection defendant could have suffered little, if any, prejudice from admission of like testimony by Hall and Neal. Bohnsack v. Driftmier, 243 Iowa 383, 396, 52 N.W.2d 79, 86, and citations; State v. Mabrey, 245 Iowa 428, 432, 433, 60 N.W.2d 889, 892, and citations; State v. Olson, 249 Iowa 536, 560, 86 N.W.2d 214, 229; 5A C. J. S., Appeal and Error, section 1731a.

Moreover, we are not persuaded evidence of the sale price of this 150-acre tract was inadmissible upon the ground now urged. The sale was from one private party to another. It does not appear the 150-acre tract was then necessarily enhanced in value by the contemplated interstate highways. It would seem the question of such increase in value would go to the weight of the evidence rather than to its admissibility.

VI. Error is assigned in receiving evidence of sales of land outside this state.

Mr. B. R. Harris, president of the development company and vice president of the Great Western Railroad, testified on direct examination the railroad owned an industrial tract of 6250 acres at Roseport, south of St. Paul and Minneapolis, Minnesota, on which lead tracks and similar improvements were installed; that 945 acres were sold from this tract in late 1953 to an oil refinery as a site for a $30,000,000 plant, 275 acres were later sold to an ammonia products company as a site for a $17,000,000 plant, and another tract to Liquid Carbonic Company as a site for a plant costing $1,500,000; the second of these sales was at four times as much per acre as the first, and the third sale was at fourteen times as much as the first. Actual sale prices were not given.

We are satisfied receipt of this evidence over defendant's objection was error. The Roseport tract was more than 18 times as large as the 342 acres under consideration here. Improvements had been installed upon it like those still in the planning stage for the property in Iowa. The Roseport land is near a population center some four times as large as Des Moines, over 200 miles distant, in another state. Lack of similarity of the two tracts seems apparent.

Plaintiffs argue the above evidence was proper to demonstrate a common trend in this type of property, that after the first sales in an industrial development area the per acre value of the remaining land accelerates in almost geometrical progression. It occurs to us that evidence of the proportional increase of price in three sales in such a dissimilar tract as the one at Roseport has little, if any, bearing on the values now under consideration.

Plaintiffs contend the trial court's statement in its findings of fact and conclusions of law, quoted in Division III, supra, indicate it did not consider the evidence regarding sales from the Roseport tract. It is not clear the court regarded this evidence as "evidence of comparable sales" which it did not take into consideration. In view of the likelihood of another trial

we will say if this evidence was considered we think it was error to do so.

Defendant's witness Rouze testified to the value of the Murphy tract before and after the taking. He expressed no opinion as to such values of the development company land. His direct examination fills nine pages of the record. His long cross-examination by Mrs. Murphy's counsel fills 67 pages. Over defendant's objection of incompetent, irrelevant, immaterial and not proper cross-examination, Rouze testified he agreed in a general way with a statement printed in a magazine called the Appraisal Journal as to the size of industrial districts in Oklahoma City, Kansas City, Atlanta, Dallas and Los Angeles, and that the purchase price of raw land in such districts can range anywhere from $600 to $10,000 an acre, depending on location and the amount of necessary grading.

Rouze also testified on cross-examination over a like objection that he agreed in a general way with the trend expressed in this statement from a like publication dated November 12, 1958: "Prime tracts of raw land in the near-by suburbs of New York are quoted as high as $12,000 an acre, up as much as 25 per cent over a year ago. In all areas, vacant land is in short supply and [in] the large cities of the northeast the outward movement of residential districts has created the shortage. This picture was drawn by brokers attending the convention of the National Association of Real Estate Boards here this week."

The trial court has a large discretion in allowing cross-examination of expert witnesses as to values and we have no disposition to limit unduly the exercise of such discretion. However, we think the bounds of proper cross-examination were exceeded in receiving the above evidence. It is clear the trial court considered it.

VII. Error is assigned in allowing plaintiffs' value witness Hall to testify to values of separate parts of the development company land. Reliance is upon the rule stated in Hoeft v. State, 221 Iowa 694, 697, 698, 266 N.W. 571, 104 A. L. R. 1008, 1011, 1012, and citations. It is a sufficient answer to this complaint that in its findings of fact and conclusions of law

the court sustained defendant's objections to the testimony complained of and stated it was not considered.

VIII. Error is claimed in receiving evidence of the value of crops growing on the land taken and in allowing plaintiffs to recover therefor, it is said, as separate items of damage.

■■■■■ Although the value of growing crops on land taken may not be recovered as separate items of damage, such value may be shown as tending to disclose the real character of the property and to support the estimates of value given by the witnesses. Ranck v. City of Cedar Rapids, supra, 134 Iowa 563, 565–567, 111 N.W. 1027, and citations; Kukkuk v. City of Des Moines, supra, 193 Iowa 444, 456, 187 N.W. 209, and citations; Randell v. Iowa State Highway Comm., 214 Iowa 1, 10, 241 N.W. 685, and citations; 29 C. J. S., Eminent Domain, section 173; 18 Am. Jur., Eminent Domain, section 343.

Under these authorities evidence of the value of growing crops was admissible but it should not be considered as in itself affording a basis or measure of recovery. "But all of the cases caution against the use of these items and elements for anything more than permissible considerations on the question of value." Nedrow v. Michigan-Wisconsin Pipe Line Co., supra, 245 Iowa 763, 769, 61 N.W.2d 687, 691.

The trial court found the fair and reasonable market value of Mrs. Murphy's land just before the taking, including crops which were lost, was $52,300, such value of the remaining property was $13,500, and she was entitled to the difference of $38,800. It is apparent the before-taking value was reached by computing it at $1500 per acre for the land and the lost crops at $1300, the amount the petition alleges and the evidence shows was the damage from their loss.

The court found the fair and reasonable market value of the development company's tract just before the taking was $513,150 (also at $1500 per acre), such value just after the taking was $139,070, and it was entitled to the difference of $374,080. The development company then filed a motion asking it be allowed the value of the growing crops on the 175.4 acres taken. The court then "enlarged" its previous findings by stating it overlooked the value of the growing crops amounting to

$6205.50 which this plaintiff was entitled to in addition to the difference previously found, making a total of $380,285.50.

It seems clear the development company was erroneously allowed recovery for the value of growing crops as a separate element of damage contrary to the authorities cited in this division.

IX. Error is assigned in the allowance of interest on the awards from August 27, 1958, date of taking possession of the land condemned.

Our decisions hold that except where the landowner alone appeals to the district court and recovers less than the condemnation award he is entitled to interest from the date of taking possession. Beal v. Iowa State Highway Comm., 209 Iowa 1308, 1310, 230 N.W. 302; Hayes v. Chicago, R. I. & P. Ry. Co., 239 Iowa 149, 155, 156, 30 N.W.2d 743, 747; Strange Bros. Hide Co. v. State Highway Comm., 250 Iowa 450, 452, 453, 93 N.W.2d 99, 100, 101. See also annotation, 36 A. L. R.2d 337, 413 et seq. Here the award was increased upon appeal and plaintiffs are entitled to interest from the date of taking unless one of two contentions defendant makes is accepted.

Chapter 318, Acts of the Fifty-eighth General Assembly, effective July 4, 1959, repeals section 472.28, Code, 1958, which required the sheriff to hold the fund deposited by the condemnor until the appeal was finally determined and section 472.29 which provided the owner's acceptance of the deposit barred his right of appeal. Chapter 318 also states the district court where the "appeal is pending, may direct that such part of the amount of damages deposited with the sheriff, as it finds just and proper, be paid to persons entitled thereto."

Defendant argues this provision amounts to a statutory tender by it, upon plaintiffs' taking their appeals to the district court, of the amount of the condemnation awards, and since plaintiffs did not apply to the district court for an order for payment of such part of the awards as it found just and proper they are not entitled to interest on the amount of the awards from the time the appeals were taken. The argument cannot be accepted. If defendant desired to stop the running of interest on part of the damages, under chapter 318, it had

994

as much right as plaintiffs to apply to the district court for an order of partial payment. This it did not do.

It does appear that on February 3, 1960, Mrs. Murphy and defendant stipulated and the district court ordered $23,000 of the award to her be paid. Also pursuant to stipulation (in effect) of the development company and defendant and order of this court $178,000 of the award to the company was paid on October 17, 1960. We understand it is conceded such payments stopped the running of interest on each amount from the date paid. We think chapter 318, Acts of the Fifty-eighth General Assembly, has no other effect on the allowance of interest here.

Defendant's remaining contention on the question of interest is that since the value of growing crops on the land taken at the date thereof was included in the award of damages, interest should be computed only from March 1, 1959, traditional end of the 1958 farming season. In considering this contention we may disregard the fact the value of growing crops was improperly allowed the development company as a separate item of damage.

This contention, however, is also untenable. No authority that supports it has come to our attention. It is perhaps true, although the record does not so show, the 1958 crops afforded the only source of income from the condemned property during that farming season. But the value of the crops was shown as of the date of the taking, not at the time of maturity or harvest. Even after harvest what remains of corn and beans has some substantial value as feed for livestock. We cannot say plaintiffs' right of possession from August 27 to March 1 was of no value. And they were deprived of it by the taking.

X. Defendant's final contention is that the trial court's ascertainment of damages due each plaintiff is excessive. As stated, $380,285.50 was allowed the development company and $38,800 was allowed Mrs. Murphy. Also, as stated, the before-taking value of both entire tracts was found to be $1500 per acre and the after-taking value of the development company's remaining land was fixed at $139,070. The last amount was testified to by defendant's witness Brandt. While

the court accepted this portion of Brandt's testimony it found the before-taking value of the development company .tract (before $6205.50 was added as the value of growing crops) exceeded Brandt's estimate thereof by $188,160. The trial court fixed the after-taking value of Mrs. Murphy's remaining land at the amount stated in her amended petition.

The condemnation commissioners assessed the damages due the development company at $197,777 and the amount due Mrs. Murphy at $29,140.

The average before-taking value of the development company tract fixed by plaintiffs' three value witnesses, Harris, Hall and Neal, was $657,433. Their average after-taking value was $92,218, with a difference between the two values of $565,215. The average before-taking value of this tract fixed by defendant's four value witnesses was $294,474, after taking $117,898, with a difference of $176,576. The average before-taking value of Mrs. Murphy's land fixed by plaintiffs' three value witnesses was $61,700, the mean after-taking value fixed by the two who testified thereto was $7675, with a difference in the estimates of these two witnesses of $50,825. The average before-taking value of Mrs. Murphy's tract fixed by defendant's three witnesses who testified thereto was $27,763, after taking $6673, with a difference of $21,090. Mr. Harris, the development company's president, fixed the before-taking per acre value of both tracts at $2000, Hall at about $1750, and Neal at not less than $1800.

It is apparent that while the amounts ascertained by the trial court are large they are well within the amounts testified to by plaintiffs' well qualified value witnesses Harris and Neal. We have often recognized this as quite persuasive. Stortenbecker v. Iowa Power & Light Co., 250 Iowa 1073, 1082, 96 N.W.2d 468, 473, and citations. (As stated, the court said it did not adopt Mr. Hall's testimony on values.) It is not contended the decision is the result of passion or prejudice. We conclude defendant's claim the damages are so excessive as to justify interference by us cannot be accepted.

Claims of excessive allowances by trial courts in condemnation cases are considered and support for the conclusion we

reach is found in Skinner v. Polk County, 250 Iowa 1264, 1267, 1268, 98 N.W.2d 749, 751, 752; Hostert v. Iowa State Highway Comm., 250 Iowa 253, 93 N.W.2d 773; Danker v. Iowa Power & Light Co., 249 Iowa 327, 332, 86 N.W.2d 835, 839; Miller v. Iowa Electric Light & Power Co., 239 Iowa 1257, 1263, 1264, 34 N.W.2d 627, 630. The two cases of Kaperonis v. Iowa State Highway Comm., 251 Iowa 39, 99 N.W.2d 284, and 251 Iowa 415, 100 N.W.2d 901, involving claims of inadequate allowances also have application here.

Defendant is entitled to a new trial because of the errors herein pointed out. Accordingly the cases are—Reversed and remanded.

All JUSTICES concur except BLISS, J., who takes no part.