Kenneth PERRY and Louise Perry,
Appellees,

v.

IOWA STATE HIGHWAY COMMISSION,
Appellant.

No. 53810.

Supreme Court of Iowa.

Oct. 13, 1970.

Richard C. Turner, Atty. Gen., Henry L. Holst, Special Asst. Atty. Gen., James F. Peterson and John L. Kiener, Asst. Attys. Gen., for appellant.

W. W. Reynoldson, Osceola, for appellees.

UHLENHOPP, Justice.

We are required here to pass upon a number of questions which arose in the trial of an eminent domain action.

Plaintiffs owned a 200-acre farm in Decatur County, Iowa. Defendant condemned 17 acres on a diagonal curve through the farm for an interstate highway. Defendant also condemned two acres along the west side and in the northwest corner of the farm, most if not all of which was already burdened by an easement for a county road. The sheriff's jury allowed plaintiffs $16,500, and plaintiffs appealed to the district court. The following from Exhibit A-1 shows the shape of the farm, with the portions condemned cross-hatched:

The farm has good improvements and is nearly all Grundy soil, the best type in the county. The land is gently rolling. Plaintiffs have conducted a grain and livestock operation on it. The improvements are on the east side of the farm. A north-south ditch runs through the middle forty, and, in bad weather prior to the highway construction, plaintiffs got back and forth from one side of the farm to the other by using county roads on the north and south sides of the farm or by going around the north end of the ditch on adjoining land belonging to their son.

The portion taken for interstate highway ranges from 300 to 320 feet in width and is about 1,300 feet long. The portion

taken along the west side of the farm is 160 rods long and 50 feet wide (of which 30 feet was previously used for county road), plus a small triangle in the northwest corner of the farm. The condemnation left plaintiffs 49.4 acres west of the interstate highway and 127.6 acres east of it. The portion on the west has no buildings for livestock or feed and no source of water.

The interstate highway cannot, of course, be crossed. In addition, the county highways on the north and south sides of the farm were closed. Presently the shortest route from the east part of the farm to the west part is approximately four and one-half miles, through Van Wert, Iowa.

The interstate highway itself contains 2.4 acres of paving in its course through the farm. Water falling on the highway is drained through tubes onto plaintiffs' land. Some water also comes from the north onto plaintiffs' farm as a result of the project.

Prior to construction of the highway, the west eighty could be farmed north and south its full length. Now the two parts of it contain numerous point rows.

The witnesses' estimates of damages were:

| Witness | Before | After | Damage |
|---|---|---|---|
| *Plaintiffs' Witnesses* | | | |
| Perry | $85,000 | $50,325 | $34,675 |
| Hembry | $84,000 | $53,985 | $30,015 |
| Brand | $83,000 | $53,000 | $30,000 |
| Richards | $80,000 | $54,500 | $25,500 |
| Beardsley | $80,000 | $55,000 | $25,000 |
| Hullinger | $87,000 | $64,000 | $23,000 |
| *Defendant's Witnesses* | | | |
| Huntley | $64,600 | $49,600 | $15,000 |
| Friday | $60,000 | $44,000 | $16,000 |
| *Averages of Witnesses* | | | |
| Average of plaintiffs' witnesses | $83,167 | $55,135 | $28,032 |
| Average of defendant's witnesses | $62,300 | $46,800 | $15,500 |
| Average of all witnesses | $77,950 | $53,051 | $24,899 |

The jury allowed plaintiffs $24,000, and after a hearing the trial court allowed attorney fees of $3,000 to plaintiffs. Hence this appeal.

Defendant urges five points: (1) plaintiffs' expert was allowed to relate prices of other sales without sufficient proof of comparability or adequate foundation, (2) Model Instruction 1.15 should have been given, (3) plaintiffs' counsel should not have mentioned federal funds used for the interstate highway, (4) a new trial should be granted to effectuate justice, and (5) the attorney fees are excessive.

I. *Comparable Sales.* In trying to show the value of the farm before and after condemnation, the parties introduced evidence of the prices of sales of other farms in the area, under the Redfield rule. Redfield v. Iowa State Highway Commission, 251 Iowa 332, 99 N.W.2d 413, second appeal, 252 Iowa 1256, 110 N.W.2d 397. Both sides relied on two of the same transactions, the Blair-Fears and the Cantwell-Miles sales, and so those sales may be placed aside. The Blair-Fears transaction involved a sale on contract of eighty acres of nearby land, consisting of Grundy and Shelby soil types. The Cantwell-Miles transaction involved a quarter-section farm of Edina soil type about 12 miles away, likewise sold on contract. In addition, defendant showed a Shoemaker-Reynolds transaction involving the sale of 230 acres of a soil type similar to Grundy, six miles away; a Kenneth Perry-Jimmie Perry transaction, involving the sale by father to son of ten acres adjoining subject farm; a Redman-Beers sale of 70 acres across the road; and a Slaymaker-Bethards sale of 100 acres of unimproved better land about three and one-half miles distant.

Plaintiffs' expert on comparable sales was Tom Richards, a real estate appraiser, right-of-way consultant, and holder of a realtor's license for 23 years. Since 1946 he has been engaged in real estate sales or appraisals. From 1956 to 1965 he worked for the United States in land acquisition, and attended several real estate appraisal schools. After 1965 he engaged in private appraisal work for a varied clientele including the States of Iowa and Illinois. He has personally purchased farms in Clarke and Decatur Counties as well as in other parts of southern and southwest Iowa.

Mr. Richards' testimony makes clear he endeavored to find sales in the area of farms which are comparable to plaintiffs' farm. As was the problem for defendant's experts, however, this was not an easy task. The evidence indicates that land in the area is spotty, with good farms and poor ones. The experts on both sides went out several miles to discover farms which had been sold recently. Plaintiffs' farm is a good one, and Mr. Richards tried to find sales of similar good farms. He considered a good many transactions. One sale involved a farm as far away as 15 miles. Richards testified:

"All across southern Iowa we all know that land's pretty spotty. We have some top places, and a mile away, you get some poor places. In some cases, right in the middle of the same farm. To make the best comparison I know of, as far as the productivity or the productive capacities of the property, you have to look at similarly productive places. So, if you have to reach out a ways to find more directly comparable sales, I think this is the logical thing to do * * *. This area that I went to, it's north and east of Garden Grove as far as general community appearance and upkeep of improvements, with respect to the land south [of] Van Wert, are very similar."

The three sales that Mr. Richards settled upon as similar, and to which defendant objects, are the Parker-Hullinger, Wilson-Reno, and McGuire-Coffman transactions. Richards testified at length about the characteristics of these properties.

The Parker farm is a little under 160 acres, and 13 miles from the Perry farm. It has good rich soil, and Richards "felt it was one that was more comparable to Mr. Perry's than some less productive place would be." The ASCS corn yield per acre is the same as on the Perry place. The improvements are only fair. The farm has a waterway, as the Perry farm does. This

sale took place about a year and a half before the present condemnation.

The second sale which Mr. Richards thought comparable was Wilson to Reno. This farm is about 15 miles from plaintiffs' farm, near Garden Grove, Iowa, and in a vicinity which compares favorably to the one in question. The Wilson improvements are good, and the land was described as "good laying". It consists of two quarter sections of Edina soil, and Richards explained to the jury that Grundy soil is more productive. The Wilson-Reno transaction took place on February 5, 1965.

Richards' third sale was from McGuire to Coffman, of a farm also near Garden Grove. This sale too involved 320 acres of Edina soil, but rougher than the Perry land and having poorer improvements. These differing characteristics were pointed out to the jury by the witness. The McGuire farm is ten miles from subject farm. The sale occurred on January 7, 1967.

Defendant's objection is that Richards was permitted to tell about the three sales without sufficient foundation and without adequate demonstration of comparability. This court has dealt with the problem on a number of occasions. Redfield v. Iowa State Highway Commission, 251 Iowa 332, 99 N.W.2d 413, second appeal, 252 Iowa 1256, 110 N.W.2d 397; Harmsen v. Iowa State Highway Commission, 251 Iowa 1351, 105 N.W.2d 660; Iowa Development Co. v. Iowa State Highway Commission, 252 Iowa 978, 108 N.W.2d 487; In re Primary Road No. Iowa 141, 255 Iowa 711, 124 N.W.2d 141; Belle v. Iowa State Highway Commission, 256 Iowa 43, 126 N.W.2d 311; Martinson v. Iowa State Highway Commission, 257 Iowa 687, 134 N.W.2d 340; Jones v. Iowa State Highway Commission, 259 Iowa 616, 144 N.W.2d 277; Linge v. Iowa State Highway Commission, 260 Iowa 1226, 150 N.W.2d 642; Crozier v. Iowa-Illinois Gas & Electric Co., 165 N.W.2d 833 (Iowa).

The governing rule is thus stated in Redfield v. Iowa State Highway Commission, 251 Iowa 332, 341–342, 99 N.W.2d 413, 418–419:

"For the evidence to be admitted it must be shown that the conditions are similar. 'Similar does not mean identical, but having a resemblance; and property may be similar in the sense in which the word is here used though each possesses various points of difference.' Forest Preserve Dist. of Cook County v. Lehmann Estate, Inc., 388 Ill. 416, 58 N.E.2d 538, 544. Size, use, location and character of the land, time, mode and nature of the sale all have a bearing on the admissibility of such evidence. * * *

"Much must necessarily be left to the sound discretion of the trial court as to whether or not the conditions are met which make the admissibility rule applicable."

The rule is repeated in Iowa Development Co. v. Iowa State Highway Commission, 252 Iowa 978, 986, 108 N.W.2d 487, 492. See Iowa Uniform Jury Instruction 14.7.

The purpose of showing other sales is to assist the jury in finding the value of the subject property by showing what similar property is bringing. Jurors are men and women of the world, and when the differences between the properties are brought out in evidence, as they were here, the jurors can make comparisons in value. Admissibility does not require a showing of the sale yesterday of the farm across the fence precisely like the subject farm. On the other hand, conditions must be similar so that the other sales are actually helpful to the jury in arriving at the value of this farm. Illustrations of sales which are not similar are found in Iowa Development Co. v. Iowa State Highway Commission, 252 Iowa 978, 108 N.W.2d 487 (question of "before value" of 342-acre and 34-acre tracts —sales of individual small tracts from one to eight acres not comparable); Bellew v. Iowa State Highway Commission, 171 N. W.2d 284 (Iowa) (before value of 149-acre farm—sales of individual building lots not comparable).

We hold that the trial court acted within its discretion here in admitting evidence of the three sales described by Mr. Richards.

II. *Model Instruction 1.15.* Defendant excepted to the trial court's instruction stating the issues because the court did not give Iowa Uniform Jury Instruction 1.15. The uniform instruction reads:

"The foregoing statement of the case is given you by the Court solely to inform you, by way of summary, of the respective claims of the parties; and the fact that a claim is made by any party is not, of itself, any proof of evidence of the fact, or state of facts, claimed."

The court's statement of the issues appears to have been patterned on Uniform Jury Instruction 14.1 on Statement of Case in Eminent Domain. It set forth plaintiffs' allegations and concluded by telling the jury that defendant denied plaintiffs were damaged as alleged.

Defendant did not file requested instructions under rule 196, Rules of Civil Procedure. Compare In re Estate of Ronfeldt, 152 N.W.2d 837 (Iowa) (party referred to language of requested instruction in exception to court's instruction); see also interpretation under comparable federal rule on requests for instructions in Home Ins. Co. of New York v. Tydal Co., 152 F.2d 309, reh. denied 157 F.2d 851 (5th cir.); Turner Construction Co. v. Houlihan, 240 F.2d 435 (1st cir.); Ostapenko v. American Bridge Division of United States Steel Corp., 267 F.2d 204 (2nd cir.).

■ Assuming arguendo that defendant is in a position to raise the point, we believe that the trial court did not err, for the sense of Uniform Instruction 1.15 was included in the instructions given. In Instruction 2 the trial court stated the various factors to be considered in finding the amount of damages and set forth the amount claimed. The court then said, "This amount is not mentioned as indicating what you should or should not allow but is the amount claimed by the plaintiffs." In Instruction 4 the court told the jury, "You are instructed that in arriving at your verdict in this case you should determine the value of this property in the light of the testimony given from the witness stand * * *. Give to the opinion of each witness on values such weight as you determine it entitled to, or none if you believe it entitled to none. Your verdict must be based on the testimony, and not upon your own estimate of value." In Instruction 7 the jury was told, "The burden of proof is on the plaintiffs to establish by a preponderance of the evidence, the 'fair and just compensation' to which they are entitled * * *."

Then in Instruction 13 the court said, "You are to determine from the evidence what the facts in the case are. You are the judge of the credibility of the witnesses and of the weight to be given the testimony of each witness * * *." In Instruction 14, "You are to try and to determine this case according to the evidence produced and submitted to you in open court * * *. You are the sole judges of the facts in the case and the Court instructs you as to the law * * *."

In Instruction 16 the court specifically told the jury:

"The Court does not, by these instructions, nor has the Court, by any ruling made or act done or word said during the trial, intimated or meant to give any intimation or opinion as to what the proof is or what it is not, or what the facts are, or what are not the facts in the case, or what your verdict should be.

"It is solely and exclusively for the jury to weigh the evidence and find and determine the facts when they are in dispute, and this you should do from the evidence alone, and, having done so, apply the law as stated in these instructions.

"In your jury room you should not refer to, nor consider, anything in connection with the case except the evidence introduced on the trial. All extraneous matters, statements and suggestions should be discarded, and you should base your verdict

solely upon the evidence, and be guided by these instructions, and seek to arrive at the very truth of the matters involved herein without sympathy, bias, passion or prejudice."

The instructions thus protected defendant from any thought that the court's statement of plaintiffs' allegations were to be taken as true. Trial courts are not required to use the parties' own language in instructions; it is the meaning that counts. "It is sufficient if the substance of requested instructions, when a trial court refuses to give them, be included in the regular instructions prepared and given to the jury by a trial court." Shank v. Wilhite, 256 Iowa 982, 985, 129 N.W.2d 662, 664. See also Lolkus v. Vander Wilt, 258 Iowa 1074, 1086, 141 N.W.2d 600, 607 ("trial court has a large measure of discretion in the giving or not giving of cautionary instructions").

III. *Federal Funds.* In paragraph 4 of their petition, plaintiffs alleged:

"4. That said condemnation proceedings were carried out in connection with Interstate Road No. I–35, Federal Aid Project No. I–35–1(7) 19—01–27, and is being financed by State and Federal funds for the purpose of constructing a super highway to connect interstate traffic."

In paragraph 4 of its answer, defendant averred:

"4. That this Defendant admits the allegations in Paragraph 4 of Plaintiffs' Petition."

In closing argument, defendant's attorney said to the jury:

"In this case the State of Iowa is handing you a blank check and telling you to fill it out. That is a very unusual circumstance, that you would have a blank check in this case, and the amount you fill out is the amount the people of the State of Iowa is [*sic*] going to have to pay."

Thereupon plaintiffs' attorney objected to the argument on the ground that federal funds are being used to pay for the highway.

The court declared a recess and retired with counsel to chambers, and defendant's attorney moved for a mistrial or, in the alternative, that the jury be told to disregard the remark about federal funds. Plaintiffs' attorney countered by requesting the right to respond in jury argument to defendant's argument about use of state funds for the project.

The trial court, endeavoring to save the trial and not magnify the matter, denied both parties' demands and told the jury:

"Now, ladies and gentlemen of the jury, the Court instructs you to entirely disregard from your minds the statements that were made by both counsel for the Defendant and for the Plaintiffs immediately prior to the recess."

Defendant is correct that attorneys in condemnation cases ought not to argue to juries about the governmental unit paying the bill, but rather, ought to direct their efforts toward the central issue: the difference in value of the property before and after condemnation. Iowa Constitution, art. I, § 18; Annotations, 19 A.L.R.3d 694, 33 A.L.R.2d 442. But here defendant is suffering from a self-inflicted wound. The pleadings show that state and federal funds are involved in the project, but defense counsel told the jury it had a blank check and the amount the jury filled out was the amount the people of the State of Iowa would have to pay. Defendant could hardly expect plaintiffs to sit in silence. The situation is somewhat akin to cases in which a defense attorney impresses on a jury the hardship on the defendant of having to pay a judgment, when the defendant is in fact insured; and the plaintiff's attorney retaliates by going into the matter of insurance. E. g., Mongar v. Barnard, 248 Iowa 899, 82 N.W.2d 765. Two wrongs do not make a right, but the party who initiates the trouble is not in a very good position to complain about it. See generally, 88 C.J.S.

Trial § 194 at 379; 53 Am.Jur., Trial, § 468 at 373.

■ Specifically, we think the result here should be the same as in State v. Barnhill, 280 Ala. 574, 196 So.2d 691. There as here counsel engaged in a colloquy over the source of the funds, initiated by the condemnor's attorney. The court held the responsive argument regarding federal funds was provoked and that it furnished no ground for reversal. See also Annotation, 19 A.L.R.3d 694, 705: "It has been held that a condemnor who first introduces evidence or makes argument as to the source of the funds for the award cannot then complain of the condemnee's evidence or argument regarding the source of the funds."

IV. *Discretionary New Trial.* Finally on the main case, defendant contends that the trial court ought to have granted a new trial to effect justice because of the cumulative effect of the three previous complaints. But we have concluded those three matters give defendant no cause to complain. Defendant then lists several complaints about occurrences at the trial, but does not assign them as errors. Nonetheless, we have examined each of those occurrences to see if the trial court should have granted a new trial because of them. They appear to be the kinds of situations which commonly arise in hot contests. On one occasion plaintiffs' attorney, objecting to a leading question by defendant's attorney to defendant's engineer, referred to them both as defendant's employees. The fact is that defendant's attorney is in the Attorney General's Department, and the objection was technically incorrect. But the witness and the attorney were allied in the defense, and we cannot see how defendant was really harmed by the objection.

Another time the trial court overruled objections to plaintiffs' evidence that defendant was condemning the fee underlying the county road on the west side of plaintiffs' farm. It appears defendant is so condemn-

ing the fee, and defendant's objection to the evidence was not well taken.

Defendant complains about plaintiffs' witnesses Hembry, Beardsley, and Hullinger. They testified on value. All are landowners. Hembry and Beardsley are farmers, and Hullinger engages in real estate and farming. They were questioned at considerable length about their qualifications and their familiarity with the Perry farm, and sufficient foundation was laid for reception of their opinions.

■ Defendant also contends that the trial court should have awarded a new trial because of the size of the verdict—although excessiveness is not separately assigned as requiring another trial. The highway project has caused substantial damages, severing the farm as it has on a slanting curve. Plaintiffs' damage is not just the loss of acreage; the principal damage is to the farm as a whole. The witnesses estimated the damages from $34,675 down to $15,000, and the jury allowed $24,000. The award is certainly not inconsequential, but we do not consider it exorbitant in view of the substantial injury to the farm and the value of agricultural land at this day.

A trial judge who experiences the entire proceeding first-hand has some discretion in determining whether justice has been done. Hahn v. Graham, 256 Iowa 713, 128 N.W.2d 886. This case was well and thoroughly tried on both sides; the issues were fully laid before the jury; the jury responded with a verdict which is well within the evidence; and the trial court concluded that the verdict should stand. We are not persuaded we should interfere.

■ V. *Attorney Fees.* Plaintiffs' attorney had this case about two years. He prepared it for trial on the evidence and law. He tried it vigorously for four days. He proved the expenditure of a large amount of time by his time slips, and he listed his cash advanced. He is an experienced lawyer, familiar with condemnation practice. The case was not a simple one, since

it involved the severance of a farm by a no-access highway. The award was increased from $16,500 to $24,000 as a result of the appeal to the district court.

Plaintiffs' attorney thought his services were worth $3,700. Estimates by other attorneys were $4,000 and $2,000. The trial court allowed $3,000.

The rule on fees is set forth in Nelson v. Iowa State Highway Commission, 253 Iowa 1248, 1257, 115 N.W.2d 695, 700:

"In determining a reasonable attorney fee to be taxed as costs in this type of case a number of matters should be considered. They include the time spent, the nature or extent of the service, the amount involved, the difficulty of handling and importance of issues, responsibility assumed, and the results obtained. * * * In addition, the recovery of a fee in this type of action is wholly contingent upon plaintiff recovering damages in a larger amount than awarded by the condemnation commission."

The fee allowed is substantial, but upon consideration of the factors involved we do not regard it excessive.

Affirmed.

All Justices concur.