Argued January 11, reversed and remanded February 21, 1962

# STATE HIGHWAY COMMISSION *v.* ASSEMBLY OF GOD, PENTECOSTAL ET AL

368 P. 2d 937

*Robert H. Anderson,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Robert Y. Thornton, Attorney General, and L. I. Lindas and Charles Peterson, Assistant Attorneys General, Salem.

*Orval N. Thompson,* Albany, argued the cause for

respondents. On the brief were Weatherford & Thompson.

Before McALLISTER, Chief Justice, and WARNER, SLOAN, O'CONNELL and LUSK, Justices.

## O'CONNELL, J.

Plaintiff appeals from a judgment on a verdict awarding defendants $3,792.75 as compensation for the taking of a portion of defendants' land for highway purposes. The defendants were also allowed $600 attorneys' fees and costs.

The property taken consisted of a strip of land along the edge of an existing highway. The defendants maintain a large church building on the portion of the property not taken. There is no issue of severance damage, the sole issue presented by the pleadings being the true value of the land taken.

Plaintiff's complaint contained the allegation that the true value of the property sought to be taken was $1,700. Defendants alleged in their answer, as amended, that the true value of the condemned property was $4,500. The reply reasserts the value to be $1,700. Defendants moved to require plaintiff to amend its complaint and reply so as to allege $2,375 as the true cash value. The trial court granted the motion. The motion was based upon the ground that plaintiff had, in a letter mailed to the defendants, made an offer of $2,375 for defendants' property and that by virtue of this offer the commission officially declared the true value of the property to be $2,375.

In support of this contention it is argued that the authority of the plaintiff highway commission to acquire property for highway purposes by negotiation or through the exercise of the power of eminent domain,

as provided by statute,[1] is subject to the proscription of Article I, § 18 of the Oregon Constitution which provides that "Private property shall not be taken for public use * * * without just compensation * * *." Defendants' brief summarizes this point as follows:

"The plaintiff, State Highway Commission, derives its authority to acquire land for rights of way from the sections of the Oregon Revised Statutes above quoted. The power of the Commission to acquire property by negotiation or the exercise of the power of eminent domain is subject to and restricted by the above quoted provision of the Oregon Constitution which requires that just compensation must be paid for such property. The Commission does not have the right to pay more nor less than just compensation for any particular piece of property. Hence, it is necessary that the Commission make a determination of the amount which it determines to be the true value of a particular piece of property. This, from the standpoint of the Commission, would constitute just compensa-

---

[1] "366.370 (1) Whenever in the judgment of the commission it is necessary to acquire real property for any of the purposes for which the commission is authorized by law to acquire real property, the commission may, after first declaring by resolution that the real property is necessary and the purpose for which it is required, attempt to agree with the owner of any interest in the real property with respect to the compensation to be paid therefor, and the damages, if any, for the taking thereof."

"366.375 (1) If the commission is unable to agree with the owner of any interest in the real property referred to in ORS 366.370, or if the owner conceals himself, or if, after diligent search, the commission is unable to find the owner within the state, the commission may commence and prosecute to a final determination any necessary or appropriate suit or action for the state in the name of the state, by and through the commission, in the circuit court of the county wherein the real property is located, for the condemnation of such interests as the owner may have in the real property, including any and all right of access if the real property to be acquired is for right of way purposes, and for determining the compensation to be paid therefor, and the damages, if any, for the taking thereof."

tion. If the Commission and the landowner can not agree upon a value then the Commission may resort to eminent domain proceedings, and in its complaint 'shall allege the true value of the real property and the damage resulting from the appropriation thereof.' (ORS 366.380 (1)) The true value that must be alleged in the complaint is the value which the Commission has placed upon the property in its official determination."

The defendants assert that the "official determination" of true value was made in a letter from the highway commission to defendants, the concluding paragraphs of which read as follows:

"I have been authorized by the State Highway Commission to offer to you, and do hereby offer and tender to you, the sum of $2,375.00 for a warranty deed conveying the said real property and easement to the State of Oregon, by and through its State Highway Commission, free and clear of all taxes, liens and encumbrances, including the proportionate part of the taxes for the fiscal year during which the State takes possession of or receives title to said real property, whichever is the earlier.

"Without your immediate acceptance of this offer, I have been instructed to institute and prosecute to final determination such condenation [sic] proceedings as may be necessary. The time and services of the right of way agent who has heretofore negotiated with you will continue to be at your disposal towards arranging the details of transaction should you desire to conclude a settlement on the basis of this offer. To that end I am suggesting that the agent contact you again and I sincerely hope that such a settlement may yet be reached so that legal action will not be required."

The defendants describe the foregoing communication as "an official notification of the official action taken by the State Highway Commission in which the

property owners are advised that the Highway Commission has made an official determination that the particular tract of property has in the opinion of the Commission a true value of $2,375."

It is conceded by defendants that the highway commission has the statutory power to negotiate with a property owner with respect to the compensation to be paid for the property taken (ORS 366.370 (1) authorizes the commission to "attempt to agree with the owner * * * with respect to the compensation to be paid") but, it is maintained, the letter was not a part of any negotiations; rather it was an outright offer and in making it the commission was required by force of Article I, § 18, to establish the true value of the property sought to be taken.

■■ We do not agree with defendants' interpretation of ORS 366.370 (1) and Article I, § 18 as applied to the highway commission's authority to negotiate in condemnation cases. The commission, in making an offer to an owner, does not purport to adjudicate officially the true value of the property sought to be taken; the amount offered by the commission is nothing more than its estimate of the value of the property based upon the opinion of the commission's appraisers. The true value of condemned property is never known until the jury returns its verdict. Prior to the jury's determination the commission has the statutory power and duty to negotiate with the owner. As we interpret the term, negotiation includes an unqualified offer to pay the owner the amount which the commission regards as just compensation for the taking. If the commission's firm offer to pay a stated amount must be construed as an official determination of true value then, according to defendants' reasoning, the commission would be without authority subsequently to pay

a larger sum even though through negotiations the larger sum was agreed upon by both the commission and the owner as the compensation to be paid for the taking. We do not believe that ORS 366.370 was intended to limit negotiations within such narrow limits.

■ Where private parties negotiate on a question of value the amount agreed upon frequently reflects the anticipated cost of litigation if an agreement cannot be reached. It is not unreasonable to assume that the legislature intended the commission to have the power to negotiate upon a similar basis and to add to the estimated value of the property the probable cost of litigation. If defendants' argument were accepted, ORS 366.380 (9) would be practically meaningless. That subsection provides in part that "if it appears that the commission tendered the defendants before commencing the action an amount equal to or greater than that assessed by the jury, the state shall recover its necessary disbursements from the defendants." If the complaint must always equal the state's offer the state would seldom recover its disbursements because the jury could never return a verdict less than the amount alleged in the complaint. We hold that the amount recited in the complaint as the alleged true value of the property sought to be taken need not conform with the amount of the commission's previous offer.

Nothing we have decided or said in previous condemnation cases is at variance with our present holding. *Highway Commission v. Nelson et al.,* 222 Or 458, 353 P2d 616 (1960), relied upon by defendants, decided only that the owner has the burden of proving that the value of the property condemned is greater than the amount alleged in the complaint. It did not

hold that the amount alleged in the complaint must conform with the amount of the offer.

Defendant also relies upon *Kennedy v. Industrial Acc. Comm'n.*, 218 Or 432, 441, 345 P2d 801 (1959) which holds that the amount of an award to an injured workman "is presumed to be correct, unless and until modified or terminated by the commission in the manner prescribed by the statute." The case merely holds that an award to an injured workman is final unless it is modified in accordance with the prescribed statutory procedure. It does not stand for the proposition that all administrative awards or offers are legally irreducible. We see no relation between the procedures prescribed by statute in the making of awards in industrial accident cases and the statutory authority of the highway commission to negotiate in condemnation cases.

We hold that the trial court erred in requiring plaintiff to amend its complaint and reply to conform with the plaintiff's offer.

██ Since the cause must be remanded for a new trial it is necessary to examine two other assignments of error. It is urged that the trial court erred in failing to sustain plaintiff's objection to the following question put to R. Earl Book, president of defendant corporation.

"Q (By Mr. Thompson) Very well. I will confine myself, your Honor. What, in your over-all plan of landscaping, had you contemplated doing with this property and what were you in the process of doing when you learned of the Highway's program?

"MR. ANDERSON: Your Honor, I object to that, particularly the part about the over-all plans of your property.

"THE COURT: I will overrule the objection. I think it is hypertechnical that you can't show the use of the property, and you may answer the question.

"A We were in the process and had built this curb for the purpose of creating a landscaping scheme so we had put in fill dirt and were grading in—down into the ditch to put on a particular cover area that would beautify the front of the church. Also it was a place where the sign of the church was placed in a very fine location in front of the church with spotlights on the sign. This was the purpose."

Plaintiff's objection to Mr. Book's testimony was on the ground that it was a description of a speculative future use of the property in question. It was admitted that the witness could testify as to the use to which the property was being put at the time of acquisition, but it is argued that evidence of defendants' plan for a future use was not admissible. Plaintiff relies upon the following principle stated in 2 Lewis, Eminent Domain § 709, 1240 (3rd ed 1909):

"Proof must be limited to showing the present condition of the property and the uses to which it is naturally adapted. It is not competent for the owner to show to what use he intended to put the property, nor what plans he had for its improvement, nor the probable future use of the property. Nothing can be allowed for damages to an intended use."

The foregoing principle was not violated in permitting Mr. Book to testify with respect to the plans for landscaping the property in question. The rule excluding evidence of prospective uses is designed to prevent the jury from including in its evaluation of the property speculative values which may or may not be realized. The testimony as to defendants' plan for

landscaping was not descriptive of a speculative future use; it was, rather, a part of Mr. Book's explanation of the use to which the property was dedicated by defendants at the time of the taking. Defendants had already begun landscaping the condemned strip in front of the church, having built a curb and cultivated the land to make it ready for lawn and shrubbery. Even though defendants had not begun landscaping operations they would have been entitled to show that the use of the strip in front of the church for the purpose of a lawn was the highest and best use to which the strip was adaptable. The owner may always show the highest and best use of the property taken. In a sense, any evidence purporting to show the adaptability of land to a use not yet made of the property is conjectural. But the rule against showing speculative uses does not preclude evidence of the adaptability of land to the highest and best use.[2] And in attempting to prove the highest and best use to which the land is adaptable the owner may show that at the time of the taking the land was being developed for a particular use.[3]

■■ We regard Mr. Book's testimony as descriptive only of the use to which the land was already dedicated—not as a prospective speculative use. This does not mean that defendants may show the contemplated costs of landscaping the condemned strip. And, it would not be proper to elicit testimony as to the specific improvements which defendants intended to make.

---

[2] State v. Jay Six Cattle Co., 88 Ariz 97, 353 P2d 185 (1960); Iowa Development Co. v. Iowa State Highway Comm'n., 108 NW 2d 487 (Iowa 1961); Board of Park Commissioners v. Fitch, 184 Kan 508, 337 P2d 1034 (1959); Williams v. Highway Commission, 252 NC 514, 114 SE2d 340 (1960); State v. Motor Freight Terminals, Inc., 357 P2d 861 (Wash 1960).

[3] State Highway Comm'n. v. Arnold, 218 Or 43, 341 P2d 1089, 343 P2d 1113 (1959).

Defendants are entitled to recover only the value of the land in its condition at the time of the taking and not the value of the land with the projected improvements. Therefore, when the cause is retried the witnesses called by defendants to testify as to the value of the property should not include in their testimony the estimated costs of landscaping and other improvements.

■ Objection was made to Mr. Book's testimony on the ground that he was not competent to testify as to the value of the property. No effort was made by defendants to lay a foundation to qualify Mr. Book as an expert or as having knowledge of the value of the property other than such knowledge as he might have solely because of his position as president of the Assembly of God corporation. In permitting Mr. Book to testify the trial judge relied upon the rule stated in *Hanns v. Friedly,* 181 Or 631, 641, 184 P2d 855 (1947), "that the owner of property is regarded as qualified to testify as to its value, and that he may so testify without any foundation being laid other than the fact of ownership." The trial court was of the opinion that the foregoing rule is applicable in the case of corporate ownership, and that no foundation is necessary to qualify an officer speaking for the corporation. We do not agree.

The rule permitting an owner to testify as to value simply because of the fact of ownership is of doubtful wisdom. Although we do not propose to disturb that rule, we are of the opinion that it should not be extended to cases where the owner is a corporation. Corporate agents called to testify as to the value of corporation property being taken by eminent domain must be qualified in the same manner as other witnesses offering testimony as to the value of the prop-

erty, i.e., either as an expert witness or as one having special knowledge of the value of the property condemned. The necessary special knowledge may, of course, have been obtained as a result of the officer's participation in the corporation's affairs.

■ In the present case objection was also made to Mr. Book's testimony on the ground that he was expressing not only his own opinion but also that of the board of directors. Clearly he was not competent to testify as to the opinion of others and plaintiff was entitled to have it made clear that the witness's opinion was solely his own.

The judgment of the lower court is reversed and the cause is remanded for a new trial.