Argued March 7, reversed and remanded May 22, 1963

# STATE HIGHWAY COMMISSION v.
## ANDERSON ET UX
381 P. 2d 707

*J. Robert Patterson,* Assistant Attorney General for Oregon, argued the cause for appellant. On the brief were Robert Y. Thornton, Attorney General for Oregon, and L. I. Lindas, Assistant Attorney General and Chief Counsel for Oregon State Highway Commission.

*Frederic H. Starkweather, Jr.,* Gold Beach, argued the cause for defendants. With him on the brief was William N. Wallace, Gold Beach.

Before McAllister, Chief Justice, and Perry, O'Connell, Denecke and Lusk, Justices.

PERRY, J.

This is an action brought by the state to appropriate, through its power of eminent domain, certain property of the defendants in Curry County, Oregon. From the judgment entered, the plaintiff has appealed.

The record discloses that the property to be acquired by the state lies along the Pacific Ocean. Seventeen acres are to be used in the construction of U. S. Highway 101, and approximately 38 acres will be developed for park purposes.

The evidence of the defendants is that at the time they acquired the property to be taken, the top soil consisted almost entirely of sand, which was drifted about by the winds; that in 1928 the defendants planted some beach grass, Ammophila Arenaria, for the purpose of stabilizing the top soil. The defendants did not testify as to any expense on their part in planting this grass. Testimony was also introduced that the land was now 85 to 95 per cent stable and suitable for the construction of homes thereon. Over the objection of the plaintiff, the trial court permitted a witness for the defendants to testify, as follows:

"Q The first question is, do you have an opinion as to the value of this particular property, or the cost to this particular property to stabilize these sand dunes in the condition they now are from shifting sand dunes.

"* * * * *

"A Yes, if I were to stabilize this piece of ground, under the stabilization it has on it right now, it would cost $310.00 per acre.

"BY MR. STARKWEATHER: (continuing)

"Q That is to put it in the condition it is in now?

"A I would say it might be in slightly better condition because there are some small blow areas on the area now."

The plaintiff assigns the trial court's ruling as error.

■ It is well established that in the total taking of private property the jury is to determine the fair cash market value of the land taken. It is equally well settled that value is to be determined on the basis of the condition of the property at the time of the taking, considering its adaptability for general or special use. *State of Oregon v. Cerruti et al,* 188 Or

103, 214 P2d 346. Fair cash market value includes not only the land, but any structures or improvements developed and placed thereon prior to the taking which would increase the value of the whole. *State Highway Comm. v. Superbilt Mfg. Co.*, 204 Or 393, 281 P2d 707.

In considering the question presented we are not dealing with structures or improvements which have been placed upon the land which would enhance its market value. We are here concerned only with the true market value of the land itself in the condition it was at the time of the taking.

The land at the time of its taking either was fit for the construction of buildings thereon, or it was not. If the land taken was already adaptable as beach property upon which structures could be erected, then it had a general use and market value for that purpose. If it was not so usable, as contended by plaintiff, the evidence admitted would be improper as showing a speculative value based on a probable use at some future time. *State of Oregon v. Cerruti et al*, supra.

██ There are cases in which the cost of improving of land is admissible for the purpose of tending to cast some light on market value, but only where the improvement is of a character having no value except in connection with the particular business or special uses of the owner and there is no general market for the improvement (*Commonwealth v. Stamper* (Ky 1961) 345 SW2d 640; *Arkansas State Highway Commission v. Richards*, 229 Ark 783, 318 SW2d 605) or where structures or improvements have been erected or added which in and of themselves have increased the true cash market value of the property over and above the value of the land itself when considered

in the light of its highest and best use at the time of the taking. 4 Nichols on Eminent Domain, 3d Ed, §§ 12.313 and 13.11. See, 4 Nichols on Eminent Domain, 3d Ed, § 12.1 at page 17. But this is not such a case, for there is no showing that the land was improved for a special use by the defendants, or that it was of such a peculiar character that the owners' loss could not be measured in money in a market lacking willing buyers, or that the expenditure of $310 per acre to stabilize the sand would raise the market value.

■ It is the true market value of the property and not the cost of it that is protected by the Fifth Amendment. *Brooks-Scanlon Corp. v. United States,* 265 US 106, 44 S Ct 471, 68 L Ed 934.

We are unable to conceive how the cost of improving land for a general use would in any wise reflect true cash market value, where the cost did not improve its use over and above the market value of other land that could be used for the same purpose. To permit the use of cost to the owner as a factor in determining true market value in a case such as this would draw into the case a factor which would be grounds for the suspicion that the jury would make an award at least equal to the owners' cost, although the true market value of such property would bear little relation thereto. Bonbright, Valuation of Property, Vol. 1, page 147.

Prejudicial error was committed in permitting the introduction of this evidence.

The cause is reversed and remanded.