Argued May 1, affirmed September 23, 1964

STATE HIGHWAY COMMISSION *v.*
DUMAS ET AL
395 P. 2d 424

*Ted E. Barbera,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Robert Y. Thornton, Attorney General, and L. I. Lindas, Assistant Attorney General and Chief Counsel for Oregon State Highway Commission.

*Francis E. Marsh,* McMinnville, argued the cause for respondents. With him on the brief was Francis E. Sturgis, Hillsboro.

Before McAllister, Chief Justice, and Rossman, Sloan, Goodwin and Lusk, Justices.

LUSK, J.

This is a proceeding in eminent domain commenced by the State Highway Commission to condemn land of the defendants for highway purposes. Plaintiff alleged in its complaint that the value of the property taken and damage to the remainder was $10,700. Defendants claimed $30,000. The verdict of the jury fixed the amount of defendants' recovery at $19,000. Plaintiff has appealed. We take from the plaintiff's brief the following description of the premises involved:

> "The defendants' property was located adjacent to the Pacific Highway West near the City of Newberg and consisted of an 0.39 acre parcel of land, together with a 'Mom and Pop' commercial enterprise made up of a combination gasoline station, grocery store with living quarters and other outbuildings. All of the improvements were included within the taking with the exception of personalty, including the defendants' gasoline pumps. Only a

small, landlocked parcel consisting of 0.13 acre remained after the taking."

There are two assignments of error. The first challenges a ruling of the trial court denying plaintiff's motion to strike out certain testimony given by the defendant Lawrence L. Dumas respecting the value of the property. Mr. Dumas testified that after he and his wife acquired the property in 1947 they made certain improvements. The store was lengthened about 12 feet, the back rooms were lengthened and the outside of the building was stuccoed. They also built a cement reservoir for the purpose of storing water in the event of a water shortage in the summer time and put in flower beds. Mr. Dumas testified that in his opinion the reasonable market value of the property immediately before the taking was $30,000 and on being asked to state the basis of the opinion he answered:

"Well, I—as I say, from what I paid for it and the improvements that I put on it and what it would bring, because I expected to live there for a few years more and as a home, and now I am without work; that's why I arrived at $30,000."

On cross-examination he testified:

"Q If I understand correctly, you arrived at your figure of $30,000 based on the cost of the improvements that you made?

"A Cost and the, of course, the improvements that I have put on.

"Q But, I mean, you based it on what the costs were to you to make whatever improvements you made after you purchased the property, is that correct?

"A Well, the improvement plus what it cost me, yes.

"Q But, in arriving at the $30,000 you actually based all or a portion of that amount on the amount of money that you had spent to make improvements since you purchased it, is that correct?

"A After I purchased the place, yes, uh-huh.

"Q Are you able to tell us, Mr. Dumas, the amount of the $30,000 that represents the cost of any improvements that you have made since you purchased the property?

"A Well, I spent over $5,000—besides the labor —I done all the labor myself.

"Q So you included in that figure $5,000, based on the cost of improvements that you have made, is that right?

"A I don't quite understand the—

"Q Well, in arriving at your opinion of $30,000, does $5,000 of that amount represent the cost, new, of the improvements that you made when you made them?

"A Yes. That's the material that I bought to make the improvements, yes."

Counsel for the plaintiff then submitted the following motion:

"Plaintiff would move to strike the amount of $5,000 from the defendant's testimony the value of this property, which is $30,000; on the grounds it is based on the cost of the improvements new and not on what the property is worth on a fair-cash-market value."

The court denied the motion and the ruling is assigned as error.

We do not reach the substantive question whether in the circumstances of this case evidence of the cost of the improvements to which the defendant Dumas testified was relevant to the issue of fair market value. On his direct examination Dumas testified that

he took these improvements into consideration in his estimate of value, but he was not asked about, nor did he testify to, their cost. Concededly, up to this point his testimony was relevant. The evidence that the witness considered the cost of the improvements in his estimate of value and that this cost was $5,000 was brought out on cross-examination. The purpose of the cross-examination was to disclose that Dumas had included an irrelevant factor in his estimate of $30,000 as the value of the property. When this appeared counsel for the plaintiff moved to strike the sum of $5,000 from the estimate.

Counsel for plaintiff have left no doubt as to the meaning of their motion. The defendants argued in their brief that the motion was againt Dumas' testimony on cross-examination and that ordinarily a party cannot assign as error the admission of evidence which he has elicited by cross-examination of his adversary's witnesses. To this contention the plaintiff in its reply brief answered:

> "In their brief, defendants state the plaintiff objected to the admission of evidence elicited by the plaintiff on cross-examination of the defendant, Lawrence L. Dumas. * * * This is not the case at all. Plaintiff's motion to strike was as follows: [Setting out motion.] Thus, it is obvious that plaintiff's motion to strike was not directed at the testimony elicited from Mr. Dumas on cross-examination, but was directed at his estimate of value in the amount of $30,000 given on direct examination."

Again, it is stated in the reply brief that the plaintiff "* * * does not complain of the admission in evidence of the testimony elicited from Mr. Dumas on cross-examination. His testimony was

not unfavorable to the plainitff, nor was it inconsistent with plaintiff's theory of the case. Mr. Dumas' testimony on cross-examination was the necessary and proper vehicle by which plaintiff exercised its right to test the credibility of the witness by inquiring into each and every element considered by him in arriving at his opinion of value for the purpose of showing the basis of his estimate to be improper and illegal *and for the purpose of having a portion of his estimate of value stricken.*" (Italics added.)

■ The rule approved by the courts is that when cross-examination develops that the opinion of a witness as to the value of property is based wholly, or in substantial part, on improper or illegal elements, a motion to strike out the testimony of the witness as to value will lie: *Oregon R. & N. Co. v. Eastlack,* 54 Or 196, 205, 102 P 1011. Many such decisions of the California courts are cited in the plaintiff's brief: *Rose v. State of California,* 19 Cal 2d 713, 742, 123 P2d 505; *Buena Park School Dist. v. Metrim Corp.,* 176 Cal App 2d 255, 262, 1 Cal Rptr 250; *People v. Dunn,* 46 Cal 2d 639, 641, 297 P2d 964; *People v. Loop,* 127 Cap App 2d 786, 800, 274 P2d 885; *Blumenstein v. City of Long Beach,* 143 Cal App 2d 264, 269-270, 299 P2d 347. See, also, *Commonwealth v. Tyree* (Ky) 365 SW2d 472, 476; *City of Chicago v. Spoor,* 190 Ill 340, 352, 60 NE 540, and the discussion of this question in California Condemnation Practice (Cont. Ed. Bar, 1960), a publication of the State Bar of California.

Plaintiff seeks to support its position by the rule that a motion to strike must be directed with precision to the matter sought to be stricken and that a motion which conjoins matter that is competent with such as may be said to be incompetent, without dis-

crimination, is properly denied: *Jennings v. Garner,* 30 Or 344, 347, 48 P 177; *Rose v. State of California,* supra. The argument seems to be that the testimony of the witness up to $25,000 was competent, but not so as to the remaining $5,000 and, therefore, that to come within the rule stated the motion must have been to strike out $5,000 from the witness' answer.

The decisions relied on do not support this theory. *Jennings v. Garner,* supra, holds that where a witness testified to an alleged declaration of a purported agent touching his agency, which was incompetent, and also to statements of the purported agent as to the terms of an agreement to pay a commission to the plaintiff, which was competent, a motion to strike out all such testimony was properly denied. In *Rose v. State of California,* an inverse condemnation action, a witness for the plaintiff, who had testified on direct to the amount the property was damaged, admitted on cross-examination that he had included in his estimate consideration of the diversion of public traffic which was held to be an improper element. Defendant moved to strike all of the witness' testimony. The motion was denied and on appeal the ruling was sustained because the witness had testified to numerous relevant facts such as that the property was best adapted to industrial use, the character of the improvements, etc. The motion was, therefore, too broad. It should have been limited to the witness' estimate of value. Other cases cited by the plaintiff are of this kind.

In the *Rose* case the witness was unable to segregate the amount of damages attributable to diversion of public traffic. Plaintiff argues that where, as here, the improper amount is segregated, a motion to strike the entire testimony of the witness as to value is too

broad. No authority supports this position, so far as we are aware. As pointed out in *Commonwealth v. Tyree,* supra, 365 SW2d at 476, where, on cross-examination, the factors a witness considered were elicited from him

> "* * * and one or more of those factors is invalid in that it involves an irrelevant measure of value or a legally noncompensable element of value, it would seem that his testimony should be subject to a motion to strike because it is based upon irrelevant factors. * * * In this situation it must be considered that the initial estimates of value were prima facie valid on the assumption that the witness considered only relevant factors, but when it is shown that actually he used irrelevant factors his estimates become invalid. It might be, however, that in some instances where the witness has attributed a specific value to the irrelevant factor, that value could be eliminated from his estimate by a requested admonition, in which event the remaining estimate would be acceptable evidence."

As to the last sentence from the above quotation, it should be observed that in Kentucky "an 'admonition' is any authoritative oral communication or statement by way of advice or caution, made by the court to the jury during the trial of a case, respecting their duty or conduct as jurors, the admissibility or non-admissibility of evidence offered by the parties, or the purpose, if competent only for a particular purpose, for which any of that admitted might or should be considered by them." *Miller v. Noell,* 193 Ky 659, 661-662, 237 SW 373. Whether an "admonition" would have been proper in this case we need not consider for none was requested.

Neither the dissenting opinion of Chief Justice

Gibson in *Rose v. State of California,* supra, nor the opinion of the court in *City of Chicago v. Spoor,* supra, suggests the propriety of a motion such as the plaintiff made in this case. Chief Justice Gibson, who thought the motion in the *Rose* case was not too broad, did say:

> "* * * Since the foundation of [the witness'] testimony was in part erroneous and since that part of his opinion which was due to improper elements could not be ascertained, the erroneous estimate of damage was unquestionably the proper subject of a motion to strike. * * *" 19 Cal 2d at 746.

The Illinois court in the *Spoor* case said of a similar situation, where the motion to strike the entire testimony of certain witnesses as to value was denied, that "the injury to the defendant could not be repaired by an instruction," for since the witnesses could not separate the damages and state what part of them rested on an improper basis, neither could the jury. 190 Ill at 350. In neither case is it suggested that if the amount attributable to the improper basis were segregated a motion to strike that amount from the witness' total estimate of value was sustainable. In *People v. Dunn,* supra, the claimed illegal amount was segregated and the court said: "Where it appears on cross-examination that the witness' testimony as to market value is based upon improper considerations, it may be stricken from the record." 46 Cal 2d at 641. In that case, however, the court held that the trial court erroneously determined that the testimony was irrelevant.

■ Allowance of the plaintiff's motion would have made the witness Dumas testify that in his opinion the property was worth only $25,000 instead of $30,000.

This the court would have had no right to do. As the Supreme Court of Georgia said of a similar motion which the trial court allowed: "We do not think the answer of the witness ought to have been cut up in this manner. By so doing he was made to testify what he did not intend to." *Atlanta Railroad Co. v. Kimberly,* 87 Ga 161, 173, 13 SE 277, 27 Am St Rep 231. See 53 Am Jur 137, Trial § 151.

For these reasons, we find the first assignment of error without merit.

■ The second assignment of error is directed to the court's denial of plaintiff's motion to strike certain testimony of Arthur H. Vincent, an appraisal witness called by the defendants. Mr. Vincent testified that the fair market value of the property taken was $20,000 and that the remainder had only nominal value. He stated that he arrived at the figure of $20,000 in the following manner:

"* * * I considered there were approximately 165 to 168 feet of frontage on one of the heaviest traveled highways in the state, with a good water supply—dug well plus a large storage which was spring fed—and then I took into consideration the buildings: A store building approximately 45 feet by 20 feet on this highway, with a residence in the back; normal car garage—not utilized as such at the moment—and then a very good shop building—concrete floor. I broke that down and I put a value of $5,000 on the property itself, including the well and the reservoir; the store building and pumps—two gas pumps and two underground tanks —I put a value of $7,500 on that part of it. Then the residential area in the back I placed a value of $6,000 on that. On the shop building—28 by 10— I believe that was—with concrete floor, I placed a value of $1,500 on that. I believe that will total up to $20,000."

On cross-examination the witness testified:

"Q Now, when you appraised this property, Mr. Vincent, did you include the gasoline pumps?

"A Surely.

"Q At what value, sir?

"A I just lumped the store building part and the pumps and the tanks at $7,500.

"Q Can you segregate the value of the pumps, Mr. Vincent?

"A No, sir.

"Q Is that impossible for you to do?

"A Well, not exactly impossible, but I don't know. I was appraising it as a going business—as it is."

Thereupon counsel for the plaintiff submitted the following motion:

"Plaintiff moves to strike the sum of $7,500 from the witness' testimony as to the value of the improvements on the grounds that it includes an item which he cannot segregate and which is not properly included. If he cannot segregate the price of the pumps—which we did not purchase in this case—then I submit that that—that his entire testimony as to the value of the improvements would be improper and should be striken [sic] from the record and the jury instructed to disregard it."

The court denied the motion.

It appears that without objection the witness testified to separate valuations placed by him on the land and on the various improvements and was permitted to give the total of these figures as his estimate of the value of the property as a whole. But he included in the figure of $7,500—his estimate of the value of the store building, the tanks, and the pumps—an unascertained amount as the value of the pumps, an item

of personal property for which, concededly, the defendants were not entitled to recover compensation. The motion was a proper one, within the rules above stated, and should have been allowed. It is unlikely, however, that the error influenced the jury to any appreciable degree, particularly as the court in its charge instructed the jury that "[n]othing can or should be allowed for any personal property which might have been located on the property under consideration." Of course, as counsel for plaintiff suggest, the jury could not have known from the evidence precisely how much to deduct for the pumps, but it was a minor item, and the verdict demonstrates that, while Vincent's testimony may have been persuasive with the jury, yet they were unwilling to follow his figures to the last dollar. The verdict was for $1,000 less than his estimate. On the other hand, the jury were evidently not impressed either by the testimony of the owner Dumas, or by the appraisal evidence of witnesses on behalf of the state, whose highest estimate of value of the premises was $11,950. It is to be doubted that on another trial there would be a widely different result. The error, in our opinion, was not of sufficient consequence to justify a reversal. See *Rose v. State of California,* supra, 19 Cal 2d at 743.

The judgment is affirmed.

ROSSMAN, J., dissenting.

Before proceeding directly to the fact that the majority, in my belief, misinterprets and misstates the motion to strike which is the basis of the first assignment of error, I believe that it will be useful to devote a moment to the rule which governs the amount of recovery in a proceeding of this kind.

*Highway Commission v. Holt,* 209 Or 697, 308 P 181, was based upon a condemnation proceeding to take 1.05 acres of the defendants' land. The defendants sought to show that they desired to use their land, which was marshy, for industrial purposes and that preparatory to doing so they filled a part of it with gravel. Upon appeal, the defendants challenged rulings of the trial judge which sustained the state's objection to testimony which the defendants offered to show the cost of the gravel. The following quoted excerpt sustained the trial judge's ruling:

> "It is well-established that where, as here, there is a total taking of the land for public use, the owner is to be compensated by receiving a fair cash market value of the land, which includes the land itself and any improvements thereon which are a part of the realty. *Highway Comm. v. Superbilt Mfg. Co.,* 204 Or 393, 281 P2d 707."

It is evident that since this court sustained the rulings of the trial judge which excluded evidence showing the cost of the improvements, it held that the cost of the improvements was immaterial to the issues of the case. In the present case the cost of the improvements was received and was included in the estimate made by the defendant, Dumas, that his property's market value was $30,000. It came into the trial concealed—like a stowaway. The plaintiff's motion to strike Dumas' testimony that the improvements cost $5,000 was denied. Thus, this case reaches a result the direct opposite of the one from which I just quoted.

To the same effect as *Highway Commission v. Holt,* supra, is *State Highway Comm. v. Anderson,* 234 Or 328, 381 P2d 707.

Other courts take the same view as those two, for example, *City of Chicago v. Giedraitis,* 14 Ill2d 45, 150 NE2d 577, held:

"Neither do we believe that the trial court erred in excluding Dorothy Giedraitis' testimony concerning amounts which she had expended since 1948 in improving the premises. Although replacements or reproduction costs may, under certain circumstances be material, this proffered proof was not designed for that purpose but sought only to show the appellant's investment and was therefore clearly inadmissible. The test is not what the improvements originally cost or the sum that the owner has expended therein, but rather it is the amount for which the entire property would voluntarily sell."

The rule stated in those decisions is so well established that this dissent need not resort to additional authorities. The measure of recovery is the market value of the property. If improvements have been made to the property, the appraisers take them into consideration when they view the property and appraise its value. In other words, the rule which governs this case awards to the owner the market value of his property as it existed upon the day of condemnation. Market value includes the entire property—improvements and all. It can readily be seen from the holding in the cases just noted that the cost of the improvements is immaterial and irrelevant. The relevant, material fact is the market value of the property.

Defendants' counsel asked one of his clients on direct examination:

"Q Mr. Dumas, can you tell the jury what you believe to be the fair market value of your property? As of the 26th day of July, 1962?"

Before quoting Dumas' answer, we note that July 26, 1962, was the day upon which this condemnation proceeding was instituted. Dumas answered: "Well, I'd say $30,000."

Thus, we see that the defendant, Lawrence Dumas, testified that the market value of his property was $30,000. Plainly no objection could have been made to either the question or the answer. An owner is entitled to testify as to the market value of his property. *Hanns v. Friedly,* 181 Or 631, 184 P2d 855; Wigmore on Evidence, 3rd ed. § 714 (5); 32 CJS, Evidence, § 546 (116). But presently cross examination brought forth a concession from Dumas that in setting $30,000 as the property's market value he included $5,000 as the value of "the material that I bought to make the improvements." He had made no statement to that effect upon direct examination. Upon cross examination he testified:

"Q But, in arriving at the $30,000, you actually based all or a portion of that amount on the amount of money that you had spent to make improvements since you purchased it, is that correct?

"A After I purchased the place, yes, uh-huh.

   ＊   ＊   ＊

"Q Well, in arriving at your opinion of $30,000, does $5,000 of that amount represent the cost, new of the improvements that you made when you made them?

"A Yes. That's the material that I bought to make the improvements, yes."

When it developed that the defendants were seeking to recover $5,000 in addition to the property's market value, the plaintiff moved to strike Dumas'

mention of $5,000 as the value of the improvements. Plaintiff's counsel stated:

"Plaintiff would move to strike the amount of $5,000 from the defendant's testimony the value of this property, which is $30,000; on the grounds it is based on the cost of the improvements new and not on what the property is worth on a fair-cash-market value."

Thus, when it developed that the $30,000 estimate concealed a stowaway of $5,000 (the purported cost of the improvements) the plaintiff moved to strike the cost of the improvements. The motion was overruled.

From the foregoing we see that defendants' counsel, by use of a question which made no mention of the unallowable item of improvements, received an answer that the property's market value was $30,000. That sum included wrongfully $5,000 for the non-compensable item of improvements. The law afforded the plaintiff no means of revealing that the defendants were seeking to win a verdict including an unauthorized sum of $5,000 except by resort to cross examination. But, when they developed that fact by an express admission of Dumas, the motion to strike was denied. It should have been sustained and the trial judge, in sustaining it, should have told the jury that the testimony was stricken because nothing could be awarded the defendants as the cost of the improvements in addition to market value. Vol. 5, Busch, Law and Tactics in Jury Trials, § 610.

Dumas' testimony renders it clear that he calculated $30,000 as the market value of his property by including in that sum $5,000 as the cost of the improvements. Had it not been for the unwarranted

addition of the $5,000 item, the market value would have been $25,000.

Possibly it is pertinent to note that Dumas' testimony concerning the cost of the materials ($5,000) was not given in an effort to establish reproduction cost. No effort of that kind was made. Likewise, it may be helpful to add that no one testified that the improvements were beneficial or added to the market value of the property. Dumas testified that the materials, as new, cost $5,000. No one mentioned the effect which depreciation had upon the improvements since their construction.

The foregoing appears to warrant an inference that if the defendants' counsel had asked Dumas on direct examination to state the amount he paid for the improvements, the court would have sustained an objection; but when Dumas concealed the $5,000 (the cost of the improvements) as a stowaway in his estimate, nothing could be done by any one to eject the stowaway from the case.

Other courts do not take the view of the majority. In *Commonwealth, Dept. of Highways v. McGeorge,* (Ky) 369 SW2d 126, the Kentucky Highway Department sought to condemn for highway building purposes .78 acre of the defendant's 9.8 acre tract. We take the following from the decision:

> "The condemnor moved to strike the valuation evidence given by certain of landowners' witnesses on the ground that they showed no reasonable basis for their estimates. For the same reason it is contended that the evidence does not support the verdict. * * * The witnesses in this case were competent on the subject of land values, and although testimony should be stricken when the witness on cross-examination makes it unmistakably clear that

his estimates are based entirely on incompetent and improper factors, it cannot be stricken or ignored merely because he flounders a little. This is for the jury to judge."

The following is taken from *Eubank v. Spencer,* 203 Va 923, 128 SE2d 299:

"If evidence has been admitted to support an allegation in an action and it is later found that it has no probative value, it should be stricken out upon request, and the jury should be told that it should not be considered for any purpose * * *."

*City National Bank v. Nelson,* 218 Ala 90, 117 So 681, held:

"We think the trial court erred in not sustaining the defendant's motion, to exclude the evidence of Mrs. Sims as to mixing the cotton, and made the basis of the third assignment of error. The witness testified on redirect examination: 'If he lacked any bale of cotton he picked on his home place, he would make out from the other, and if he lacked at that place he would pick out from the home place and just mix it together.' On recross the witness stated: '* * * I actually didn't see it. I said he mixed it because that was his rule, that fall I didn't actually see it.' The motion to exclude specifically stated, 'the evidence of the witness that if Sims did not have enough cotton picked off of one place to make a bale, he would mix it with cotton picked off of another place.' The witness on recross showed that she did not know the facts to which she had testified."

In affirming the challenged judgment, the majority places upon the motion which the plaintiff made to strike the testimony which Dumas gave and in which he stated that the improvements cost $5,000 a meaning which even the defendants have not placed upon it.

I shall shortly quote the defendant's exact words. The majority do not pass upon the plaintiff's motion, but quote some words from the plaintiff's brief and substitute them for the motion. In my opinion, the words selected by the majority do not have the meaning which the majority attribute to them. Obviously, after Dumas had testified to a belief that his property's market value was $30,000, in which sum he had wrongfully included $5,000 as the cost of the improvements, the plaintiff wished to challenge that testimony. But until it received a ruling that the $5,000 item was inadmissible and that the cost of improvements was unallowable it could not attack the estimate of $30,000. The plaintiff's effort to explain that situation in the brief accounts for the statement which the majority take from the brief. The plaintiff moved to strike only the $5,000 item; presumably it did so as a preliminary to attacking the $30,000 estimate.

Plaintiff's motion to strike reads:

"Plaintiff would move to strike the amount of $5,000 from the defendant's testimony the value of this property, which is $30,000; on the grounds it is based on the cost of the improvements new and not on what the property is worth on a fair-cash-market value."

It is difficult to understand how the majority can encounter any perplexity in determining the meaning of those words. It will be noticed that the motion sought to strike $5,000 from the defendant's testimony. In order to make his meaning doubly certain, plaintiff's counsel added that his motion was "based on the cost of the improvements new and not on what the property is worth on a fair-cash-market value." Thus, it is clear that the plaintiff moved to strike the part of

Dumas' testimony, which he had just given and in which he stated that the improvements cost $5,000.

The majority, in an effort to sustain its ruling, quotes from the plaintiff's brief. The latter also states:

"* * * Thus, when it became apparent upon cross-examination that Mr. Dumas had included within his estimate of value the sum of $5,000, representing the cost of certain unspecified improvements made upon the property, plaintiff's counsel made the following motion:

" 'Mr. Bemis: Plaintiff would move to strike the amount of $5,000 from the defendant's testimony the value of this property, which is $30,000; on the grounds it is based on the cost of the improvements new and not on what the property is worth on a fair-cash-market value.' Clearly, plaintiff's motion was not overbroad, but was definite, certain and directed precisely to the sum of $5,000, being the cost of certain improvements, which, as we have seen, is not competent proof of the market value of the property taken. Plaintiff submits that the trial court erred to the plaintiff's prejudice in failing to grant plaintiff's motion to strike this portion of Mr. Dumas' testimony * * *."

Accordingly, it is clear that the plaintiff sought to strike from the record the cost of the improvements.

The first assignment of error reads:

"The trial court erred in denying plaintiff's motion to strike from the testimony of the witness, Lawrence L. Dumas, the sum of $5,000, representing the cost of improvements made upon the property."

That assignment of error states in clear, understandable language that the plaintiff wishes a ruling by this court that the trial judge erred when he denied the plaintiff's motion to strike from Dumas' testi-

mony his statement that he spent $5,000 "as the cost of improvements made upon the property." We invariably accept the assignment of error as the basis of our rulings. This court has no power to redraft an assignment of error.

The defendants-respondents have experienced no difficulty in determining the meaning of the motion to strike nor in determining the purpose of the motion upon which the first assignment of error is based. Their brief states:

> "The refusal of the Court to strike the sum of $5,000 for improvements constitutes plaintiff's first assignment of error."

The majority with approximate accuracy states the purpose of the plaintiff's motion. Their opinion declares:

> "The purpose of the cross-examination was to disclose that Dumas had included an irrelevant factor in his estimate of $30,000 as the value of the property. When this appeared counsel for the plaintiff moved to strike the sum of $5,000 from the estimate."

As the majority state, the purpose of the cross examination was to reveal that when Dumas expressed an opinion that the property's value was $30,000 he included in his estimate an unallowable item of $5,000. by glancing once more at the motion to strike, it is seen that the plaintiff did not ask that $5,000 be stricken from Dumas' "estimate" but that his statement that the improvements cost $5,000 be stricken.

Obviously, the ultimate objective of plaintiff's motion to strike was Dumas' testimony that the market value of the property was $30,000. But even though the cross examination had disclosed that the estimate

of $30,000 included $5,000 for improvements, the plaintiff could not move to strike the estimate. As owner of the property, Dumas could rightfully place before the jury his opinion that the property was worth $30,000. His opinion as to his property's market value could not be stricken. But, if his statement that the improvements cost $5,000 had been stricken, his estimate of $30,000 would have been undermined to the extent of $5,000. As already pointed out, the trial judge, upon sustaining the motion to strike (had he sustained it), should have explained to the jury that the motion to strike was allowed because in this case nothing could be awarded to the defendants for the cost of improvements in addition to market value.

It seems plain that the plaintiff was entitled to a ruling upon its motion since (1) the motion to strike clearly states that it was aimed at the $5,000 cost of the improvements and not at the $30,000 estimate of the property's value, (2) the first assignment of error is clear in meaning, (3) the plaintiff's (appellant's) brief states with clarity the meaning and purpose of the motion, and (4) the defendants' brief states that "the refusal of the court to strike the sum of $5,000 for improvements constitutes plaintiff's first assignment of error."

If we would now hold that error occurred when the motion to strike was denied, no one would be wrongfully prejudiced. To the contrary, justice would be promoted.

The majority seems to intimate that because the cost of the improvements, $5,000, was disclosed upon cross examination, the plaintiff could not move to strike the answer. The only way in which the plaintiff could reveal the fact that the defendants were

seeking to recover an unallowable amount of $5,000 was through cross examination. It had not been disclosed on direct examination. The fact that a non-recoverable sum of $5,000 lurked in Dumas' answer "$30,000" could be brought to light only by cross examination. Everyday procedure in the circuit courts employs this practice and strikes from the record inadmissible testimony that was given before its infirmity appeared, or an item, such as $5,000, that the witness had lumped into a general total, such as $30,000. No other rule would be tolerable.

The majority also states that if $5,000 were stricken from Dumas' testimony of "I'd say $30,000," the court would thereby attribute to him an answer that he had not made. No such argument is ever advanced when a plaintiff or a defendant moves to strike from a pleading, signed by the opposing party, a part thereof. However, the majority's statement is without foundation. Dumas' answer that he spent $5,000 on improvements stood by itself. It was the only answer given by him against which the plaintiff moved. His answer that the property's market value was $30,000 would not have been altered had the motion to strike been sustained. But if the motion to strike had been sustained, Dumas' estimate that his property's value was $30,000 would have been deprived of support to the extent of $5,000 and his counsel could not have reiterated to the jury upon argument that the defendants had invested in the property $5,000 for improvements.

I repeat that in my belief the plaintiff properly phrased and submitted to the trial judge its motion to strike from the record Dumas' testimony that the improvements cost $5,000. But, even if the plaintiff did not properly express in its brief the motion which

it submitted to the trial judge, a proposition from which I dissent, it is impossible to understand the significance of such a contention. The trial judge obviously had not seen that brief. The motion upon which he acted is the one which underlies assignment of error No. 1; it is not the phraseology, taken by the majority from the plaintiff's brief. Both parties are in accord, as we have seen, upon the meaning of the motion that was actually submitted to the trial judge.

Since the majority affirm the denial of the plaintiff's motion to strike the unwarranted item of $5,000 from the record, the plaintiff has been left in the position in which it is helpless to rid the record of an item of evidence which came into the record as a stowaway and which the decisions mentioned in a preceding paragraph hold was immaterial. The plaintiff could not have moved to strike Dumas' testimony that the market value of his property was $30,000 because he, as the owner of his property, was entitled to express his opinion of the property's market value. Further, we noticed from the transcript of testimony that the question put to Dumas by his attorney did not mingle into the question anything about the improvements and Dumas' answer to the question avoided all mention of improvements. Since the motion to strike was denied, the defendants' attorneys, in their arguments to the jury, twice mentioned the improvements and that Dumas had paid for them $5,000. The instructions given to the jury said nothing whatever about improvements. Under those circumstances it is reasonable to infer that the jury included in its verdict something for the cost of the improvements. Such a situation should not be tolerated by a court which administers justice. Inadmissible and immaterial evidence

should be excluded from the record when a party submits a motion, like the one that we have quoted. Another meaning should not be substituted for it.

Since the above are my views, I deem it unnecessary to set forth the reasons which persuade me to believe that assignment of error No. 2 also possesses merit.

I dissent.