264

Argued June 24, reversed and remanded November 11, 1971,
petition for rehearing allowed March 7, 1972, reargued
on petition for rehearing April 21, former opinion
adhered to May 4, petition for review allowed
July 11, 1972

STATE HIGHWAY COMMISSION, *Respondent,*
*v.* COMPTON ET AL, *Appellants.*

490 P2d 743
496 P2d 251

*John L. Schwabe* and *Andrew F. Fink,* Portland, argued the cause for appellants. With them on the briefs were Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

FORT, J.

Defendants appeal from a judgment determining the value of their land taken by the plaintiff in this condemnation action, asserting several errors. The first relates to the rejection by the court of evidence concerning the fair rental income obtainable for the property.

The Compton property is located on the east side of McLoughlin Boulevard, a major arterial in Portland, Oregon. The block on which the property is located contains 12 lots and lies immediately south

of the Ross Island Bridge and close to the downtown area. Before the taking, defendants owned nine of these lots, six of them comprising a block-long frontage on McLoughlin Boulevard of 312 feet and the remaining three adjoining but facing another street, with a total combined area in the nine lots in excess of 40,000 square feet. The acquisition leaves defendants with a remainder of the three lots facing the interior street. The six lots actually taken aggregate 26,772 square feet.

The property is visible from a number of places in the city. At the time of trial it was zoned for residential purposes, but both parties agreed that it was reasonably probable that a zoning change could be obtained. Several experts testified for both parties concerning the nature of the zoning change deemed to be a reasonable probability. A basic theory of defendants was that its highest and best use was as a motel site, and that rezoning the property to permit that use was a reasonable probability within the immediately foreseeable future. Expert opinion to that effect was offered and received. The state contended that rezoning for that particular use was not a reasonable probability within the immediately foreseeable future. Expert opinion supported both positions.

An expert witness was called by defendants. Mr. Rice, a certified public accountant working for an international accounting firm specializing in motel properties, had done extensive work for hotel and motel chains concerning possible locations for leasing arrangements, including studies to determine the feasibility of possible hotel and motel operations. He testified the property here would be a good motel site, and could probably be leased to a chain motel organization. This was substantiated by detailed evidence.

Defendants sought to elicit from Mr. Rice testimony as to the minimum annual rental for the Compton property based upon a standard land lease arrangement typically made by a chain motel organization for suitable pieces of property. Mr. Rice testified that for such organizations there is a standard approach to a land lease. He explained what this standard approach involved and that there was nothing about the Compton property that would make it unsuitable for use by a motel chain. He stated the standard rental agreement does not depend on probable profitability of an imaginary motel on the property, but that it is simply the net amount paid to the landowner by a motel chain for the raw land exclusive of any expenses, and it is paid by the motel chain to the owner of the property whether or not a motel is erected on the premises.

During his direct examination Mr. Rice was asked the following question:

"Q   Assuming again the Compton property which has forty thousand plus square feet in it, and we're talking about March of 1969, do you have an opinion as to what the minimum annual rent would be, the net net net rent, under that type of lease for this property?"

The court, following an objection, refused to allow the witness to answer. This refusal constitutes the principal assignment of error. In chambers the defendants made an offer of proof. Just before the witness testified, defendants' counsel again said to the court:

"We are talking about here 40,000 square feet plus. Mr. Rice would testify from that how much land use. Something pretty obvious. You could have at least a hundred rooms in that much space.

Any chain motel would know this, like you know you have enough room to put up a hotel or house on so many square feet. * * *"

The essence of the offer of proof was:

"[Defense counsel:] Q What is the minimum rental in your opinion?

"A I think in my opinion in bargaining between a competent landowner and between a chain motel that the minimum would probably be, the minimum would be two thousand a month or more."

It is obvious that the witness in stating that figure was referring to the entire Compton tract of 40,000-plus square feet, not the 26,772 actually taken.

It has been the defendants' theory to establish by other competent evidence, utilizing the capitalization of income method,[1] the fair market value of the property taken, based upon the net rental figure of $2,000 per month. Because of the court's ruling, the defendants were unable to do so.

The offer of proof contained nothing upon which the jury could base an allocation of the rental figure between the land taken and that retained. It did not establish any rental figure for the land taken, nor did the witness testify whether the land taken without the portion remaining was itself suitable for a motel site.

■ While it is true that in Oregon evidence of probability of future use of property is admissible under certain conditions,[2] that evidence must relate to the

[1] City of Medford v. Bessonette, 255 Or 53, 463 P2d 865 (1970); State Highway Com. v. Ernest, 234 Or 253, 380 P2d 988 (1963).

[2] State Highway Com. v. Bailey, 212 Or 261, 319 P2d 906 (1957); Highway Com. v. Assembly of God, 230 Or 167, 368 P2d 937 (1962); State Highway Com. v. Arnold, 218 Or 43, 341 P2d 1089, 343 P2d 1113 (1959); Highway Commission v. Anderson, 234

particular property which is being taken or be offered in a manner which reasonably permits its application to that property alone. No other evidence or offer of proof has been called to our attention whereby that portion of the $2,000 net rental figure might be allocated to the property taken or to that remaining.

There are two basic issues to be resolved in deciding whether the objection to the proffered testimony was properly sustained: (1) Was the evidence incompetent because it involved not a present, but a future use of the property, and (2) if not, was it incompetent as involving factors deemed to be speculative and conjectural and thus not admissible in computing the market value of property in condemnation proceedings?

■ In condemnation proceedings, the condemnee is entitled to recover the present fair market value of the property for its highest and best use at the time of the taking. *Highway Com. v. Assembly of God,* 230 Or 167, 177, 368 P2d 937 (1962); *State Highway Com. v. Arnold,* 218 Or 43, 57, 341 P2d 1089, 343 P2d 1113 (1959). The cases in this state hold that evidence of future use of the property in question is admissible under certain conditions. In *State Highway Com. v. Bailey,* 212 Or 261, 319 P2d 906 (1957), the court, quoting from 31 CJS 883, Evidence § 182, stated:

> " '* * * Any competent evidence of matters, not merely speculative, which would be considered by a prospective vendor or purchaser, or which tend to enhance or depreciate the value of the property is admissible. The character, location, and

Or 328, 381 P2d 707 (1963); State Highway Com'n v. Deal, 191 Or 661, 233 P2d 242 (1951); State of Oregon v. Cerruti, 188 Or 103, 214 P2d 346, 16 ALR2d 1105 (1950).

physical condition of the real estate, and the use to which it is put, may be placed before the jury, and evidence is admissible to show any probable use to which the land could reasonably be put, such as manufacturing, farming, railroad, or residential purposes, although it is not then being used for such purposes. However, speculative or remote ways in which the land could be used cannot be considered in determining its value.' " 212 Or at 307.

*See also, Assembly of God,* 230 Or at 176. In *Arnold,* 218 Or at 57-58, the court stated:

"In determining the present market value of property it is not improper to consider the uses to which the property can be put in the future if the prospect of such uses is more than a speculative forecast and if the probability of such future use would be reflected in the value which a present purchaser would attach to the property. [Citations omitted.]

"* * * * *

"* * * It is not enough to show that prospective uses are within the realm of possibility; they must be shown to be reasonably probable in the immediate future. [Citations omitted.]

"It is for the jury to decide whether the prospective use is reasonably probable, assuming of course, that there is evidence upon which to base such an inference. *United States v. Waterhouse,* 132 F2d 699 (9th Cir. 1943)."

Other Oregon cases supporting the above proposition are *Highway Commission v. Oswalt,* 1 Or App 449, 453, 463 P2d 602 (1970); *Highway Commission v. Anderson,* 234 Or 328, 330, 381 P2d 707 (1963); *State Highway Com'n v. Deal,* 191 Or 661, 668, 233 P2d 242 (1951); *State of Oregon v. Cerruti,* 188 Or 103, 112-13, 214 P2d 346, 16 ALR2d 1105 (1950). *See also,* Anno-

tation, 16 ALR2d 1113 (1951); Annotation, 134 ALR 1125 (1941); Annotation, 65 ALR 455 (1930); 2 Lewis, Eminent Domain 1227, § 706 (3d ed 1909); 1 Orgel, Valuation Under Eminent Domain 96-97, § 21, nn 28, 29 (2d ed 1953); 5 Nichols', Eminent Domain 50-51, § 18.11 (2) (Rev 3d ed 1969).

■ From the above-cited cases and authorities it is clear that otherwise competent evidence of the market value of the property for the highest and best use to which there is a reasonable probability it may be devoted in the reasonably near future is admissible.

■ We have stated that the fact a future use of property depends upon a zone change does not necessarily preclude evidence of such use. Where there is a reasonable probability that the zone restriction will be altered in the near future, the jury may consider evidence of uses to which the property could be devoted in the event of such change. However, the prospect of the zone change must be more than a mere speculative forecast. *Highway Commission v. Oswalt,* supra, 1 Or App at 452. The evidence in the instant case of the probability of zone change was more than "a mere speculative forecast." It was properly received.

■ The second issue for decision is whether the proffered evidence of rental value was competent as an aid in computing the fair market value of the property actually condemned. As a general rule, evidence of profits derived from a business conducted on land is too speculative to be used in ascertaining the market value of land. *Highway Commission v. Nunes,* 233 Or 547, 555, 379 P2d 579 (1963); *State of Oregon v. Cerruti,* supra; Annotation, 134 ALR at 1125; Annotation, 65 ALR at 455; Annotation, 7 ALR 163 (1920); 1

Orgel, Valuation Under Eminent Domain 700, § 177 (2d ed 1953); 5 Nichols', Eminent Domain 53-56, § 18.11 (2) (Rev 3d ed 1969).

Estimated rentals, however, have been recognized as a useful guide in the valuation of real estate. As such, most courts have subjected this evidence to special treatment different from that of business profits. In *Cerruti*, 188 Or at 108-09, the Supreme Court said:

> "But there are well-established exceptions to the general rule. The overriding principle is thus stated by Lewis, op. cit., 1274, § 727:
>
>> " 'The profits derived from the use of the property itself may be shown, whenever such profits would be an indication of value. If a valuable city lot is devoted to gardening purposes, the profits derived from it may be no indication of its value. But if it is improved to correspond with its locality and surroundings, the rents derived from it, after deducting taxes and expenses, will be a very important factor in determining what it is worth. Where a toll-bridge was taken, it was held proper to show the income from it during a series of years preceding the taking. So the profits derived from farming afford a criterion of the value of the farm.'
>
> "* * * * *
>
> "The reason for admitting rental value has been said to be 'because it is almost as fixed and certain as the market value of the property.' *Gauley & E. Ry. Co. v. Conley*, 84 W. Va. 489, 100 S.E. 290. In the toll bridge, and also in the turnpike cases, and the well-known case of the scenic viewpoints in the vicinity of Niagara Falls, *In re State Reservation*, 16 Abb. N.C. (N.Y.) 159, evidence was admitted of the profits derived from the use of the

properties because such profits were the entire or chief source of value. [Citations omitted.]"

*See also,* 1 Orgel, Valuation Under Eminent Domain 700, §§ 177, 178 (2d ed 1953).

■ In the instant case, the evidence which defendant sought to introduce concerned the minimum annual rental exclusive of any expenses for which a motel chain would lease the bare land. The proffered evidence of rental amount did not depend upon the profitability of a future motel.

In *State Highway Com'n v. Deal,* supra, 191 Or at 668, the court quotes the following from 2 Lewis, Eminent Domain 1233, § 707 (3d ed 1909):

" 'The market value of property includes its value for any use to which it may be put. If, by reason of its surroundings, or its natural advantages, * * * or its intrinsic character, it is peculiarly adapted to some particular use, all the circumstances which make up this adaptability may be shown * * *.' "

We conclude in the light of the foregoing authorities that competent evidence of the probable annual net rental of the Compton property was admissible.

We note that the evidence sought to be introduced was not completely free from speculative considerations. We have already pointed out that the Rice testimony stated a rental for the entire Compton tract, not just the portion taken. Furthermore, defendants presented no evidence indicating for what period a chain motel would lease the subject property. Also, from the testimony, the amount of the standard motel lease for the raw land apparently depends, in part, on the number of rooms to be built and a mini-

mum room rental. Another element apparently relied on by Mr. Rice concerned "the type of coffee shop restaurant facilities a chain would have located on the property."

Here, however, the evidence offered was a necessary prerequisite to establishing the before and after value of the property taken. Severance damage was an important item in the defendants' theory of the case. Finally, the testimony offered was the *minimum* rental. The other matters alluded to above did not affect the minimum rental, for Rice testified what would probably be received from the bare rental. It was simply a guaranteed minimum rental figure. These factors related only to the amount that might be received on a basis of 7½ per cent of the room rentals. As such, in another trial these speculative factors should be excluded and the testimony confined only to the minimum guaranteed rental figure. We conclude that qualified opinion testimony establishing the present reasonable probability of a guaranteed minimum rental for the bare land was admissible.

■ Defendants next contend that the trial judge erred in sustaining plaintiff's objection to the admission of an exhibit which consisted of a drawing of a proposed motel designed to show the feasibility of such use for the subject property. It was offered solely "for the specific purpose of showing the adaptability to which this land could be put and for the highest and best use of this particular piece of property." The plans were not offered to show a specific proposed improvement which the defendants had intended to place upon the subject property. Since the exhibit was offered only to show the adaptability of the property for motel purposes, it was admissible for that limited purpose and should not have been excluded.

In *State Highway Com'n v. Deal,* supra, 191 Or at 669, the court said:

"The matter is thus stated in 2 Nichols on Eminent Domain (2d ed.) 1170, § 445:

" 'Evidence of the value of the property for any use to which it is reasonably adapted, is, as already stated, admissible, but such evidence must be limited to a bare statement why the property is adapted for a particular purpose and to testimony of its value for such purpose. *As bearing upon these issues the owner may offer a plan showing a possible scheme of development for the purpose for which it is most available,* but he cannot go further and describe in detail to the jury a speculative enterprise for which in his opinion or that of some expert the land might be used, and base his estimate of value upon the profits which he would expect to derive from the enterprise. \* \* \*' " (Emphasis supplied.)

No effort was here made to relate the exhibit to any theory of lost profits.

■ In order to show that the property can be adapted to what the condemnee reasonably asserts to be its highest and best use, the owners are permitted for that limited purpose to introduce a fairly projected plan for such development upon the land. *See, People ex rel. Dept. Pub. Wks. v. Silveira,* 236 Cal App 2d 604, 46 Cal Rptr 260 (1965).

Plaintiff fears that this evidence may lead the jury to speculate and base its award on the value of the property with improvements or on the loss of potential profits from proposed improvements. This possibility can adequately be guarded against by proper instruction.

The remaining assignments of error are without merit. The judgment is reversed and remanded for a new trial.

## ON PETITION FOR REHEARING

*John L. Schwabe,* Portland, argued the cause for appellants on rehearing. With him on the briefs were Souther, Spaulding, Kinsey, Williamson & Schwabe, and Andrew F. Fink, Portland.

*Leslie B. Hampton,* Assistant Attorney General, Salem, argued the cause for respondent on rehearing. On the brief were Lee Johnson, Attorney General, Jacob B. Tanzer, Solicitor General, and Al J. Laue, Assistant Attorney General, Salem.